MARCUS BROTHERS TEXTILES, INC., Plaintiff-Appellant v. PRICE WATERHOUSE, LLP (formerly Price Waterhouse), and JOHN DOES I-V, individually and as members of PRICE WATERHOUSE, Defendant-Appellees

No. COA97-435

(Filed 7 April 1998)

**1. Accountants § 20 (NCI4th)— audited financial statements—negligent misrepresentation—knowledge by accountants—genuine issue of material fact**

In an action by a fabric supplier-creditor of a fabric retailer against certified public accountants for negligent misrepresentation of a receivable from a general partner in the retailer's audited financial statements, a genuine issue of material fact was presented as to whether defendant accountants had knowledge that the retailer would provide the audited financial statements to its suppliers in order to buy on credit and that plaintiff would be included in a limited group to whom the audited financial statements would be provided.

**2. Accountants § 21 (NCI4th)— audited financial statements—negligent misrepresentation—justifiable reliance—genuine issue of material fact**

In an action by a fabric supplier-creditor of a fabric retailer against certified public accountants for negligent misrepresentation of a receivable from a general partner in the retailer's audited financial statements, a genuine issue of material fact was presented concerning plaintiff's understanding of the receivable from the general partner and whether plaintiff justifiably relied on its understanding of the receivable in extending credit to the retailer.

Judge WYNN dissenting.

Appeal by plaintiff from order dated 6 December 1996 and filed 9 December 1996 by Judge William H. Freeman in Forsyth County Superior Court. Heard in the Court of Appeals 27 January 1998.

The plaintiff, Marcus Brothers Textiles, Inc. ("Marcus Brothers"), is a converter in the business of supplying fabric to retail vendors. The defendant, Price Waterhouse, LLP ("Price Waterhouse") is an independent certified public accounting firm.

MARCUS BROS. TEXTILES v. PRICE WATERHOUSE, LLP

[129 N.C. App. 119 (1998)]

On 11 August 1995 Marcus Brothers filed a complaint against Price Waterhouse alleging negligent misrepresentation and gross negligence. Plaintiff seeks damages from Price Waterhouse and individual certified public accountants with Price Waterhouse resulting from plaintiff's claimed reliance on financial statements Price Waterhouse audited for its client, Piece Goods Shops Company, L.P. ("Piece Goods"). Plaintiff claims that "1992 audited financial statements materially misrepresented Piece Goods' financial condition and that Price [Waterhouse] knew that Piece Goods intended that [plaintiff] would rely on them in making its decision whether to extend credit to Piece Goods and in what amount." Plaintiff states that the audited financial statements "included [Price Waterhouse's] unqualified opinion that the financial statements 'fairly' and 'in all material respects' accurately presented Piece Goods' financial position, the results of its operations, and its cash flows for the relevant years." Plaintiff claims that it made several extensions of credit to Piece Goods between 30 December 1992 and 5 April 1993 based on those audited financial statements. On 19 April 1993, with a $288,440.63 debt owed to plaintiff, Piece Goods filed for bankruptcy.

Plaintiff alleges that the 1992 financial statements audited by Price Waterhouse contained several material misrepresentations and reflected numerous departures from Generally Accepted Accounting Principles ("GAAP"), and that Price Waterhouse's failure to alert readers of the financial statements to those departures violated Generally Accepted Auditing Standards ("GAAS"). First, plaintiff claims that the 1992 financial statements indicated a "Receivable from General Partner" in the amount of $30,332,000.00 but that the receivable was worthless because the General Partner did not have the ability to pay the amount due. Piece Goods did not write off this receivable and Price Waterhouse took no exception to this departure from GAAP, an omission which plaintiff claims violated GAAS. Second, Piece Goods also erroneously increased the reported value of this receivable by recording accrued interest on the balance sheets, although Piece Goods knew it was not collectible. Piece Goods reported the uncollectible interest as income and offset it against actual interest expense paid in cash. Price Waterhouse was aware but took no exception to this departure from GAAP in its audit report, another omission which plaintiff claims violated GAAS. Finally, the financial statements reflected nearly all payables for certain pattern inventories as noncurrent, long term liabilities, but reflected the inventories for those pattern inventories as current assets. Plaintiff claims the result was to

overstate Piece Goods' working capital and distort Piece Goods' current working capital ratio.

Defendant moved for summary judgment on 5 June 1995. Following a hearing on 14 October 1996, the trial court allowed summary judgment for defendant on 9 December 1996. Plaintiff appeals.

*White and Crumpler, by Dudley A. Witt and Laurie A. Schlossberg, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, by Hada V. Haulsee and John J. Bowers, for defendant-appellee Price Waterhouse, LLP.*

EAGLES, Judge.

### I.

[1] We first consider whether the trial court erred in granting defendant's motion for summary judgment on the claim of negligent misrepresentation because plaintiff's evidence was sufficiently "substantial" to entitle plaintiff to have a jury consider the question of defendant's knowledge that Piece Goods intended that plaintiff would rely on the financial statements in plaintiff's decision to extend credit.

Plaintiff argues that genuine issues of material fact remain regarding the requisite knowledge element and that summary judgment should be reversed. Plaintiff contends that their evidence, and the reasonable inferences to which it gives rise, show that plaintiff was a member of "a limited group of persons" whom defendant knew, at the time Price Waterhouse audited Piece Goods' 1992 financial statements, that Piece Goods intended to provide copies of those statements for the purpose of "influenc[ing]" plaintiff in its decision to extend credit. *Restatement (Second) of Torts* § 552 at 2(a). Plaintiff argues that the actual identity of plaintiff need not have been known by defendant when the defendant prepared the information. It is sufficient that the "maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given." *Restatement (Second) of Torts* § 552 cmt. h (1977).

Plaintiff first cites as evidence an internal memorandum of defendant dated 25 September 1989 and initialed by Robert A. Smith, a partner at Price Waterhouse who worked on the 1992 audit. The

memorandum states: "[Price Waterhouse] has historically reported on the financial statements of [Piece Goods] and . . . vendors and factors are accustomed to receiving [Piece Goods] financial statements . . . ." Plaintiff contends that this memorandum shows that defendant knew that Piece Goods regularly furnished its vendors and creditors with financial statements. Accordingly, plaintiff contends that since Piece Goods was in a business where acquiring inventory on credit is standard operating procedure, and since by 1992 defendant had been Piece Goods' accountant and financial adviser for six years, a factfinder could logically conclude that defendant knew why Piece Goods regularly gave creditors its financial statements, namely, to influence their decisions to extend credit.

Plaintiff next cites deposition testimony from Karen Frazier, the Price Waterhouse employee who was manager of the 1992 audit. Frazier testified that audited financial statements are "to be used by the management of the company and possibly outsiders," that trade creditors like plaintiff "could" be included among the "outsiders," and that in Piece Goods' situation, the outsiders "could" include "suppliers of material and inventory patterns."

Plaintiff next cites Piece Goods' 1993 bankruptcy filing which indicated that 43 trade creditors received copies of audited financial reports within the two years immediately preceding the bankruptcy filing. Plaintiff contends that this supports "the common sense inference that as Piece Goods' accountant since 1986, Price [Waterhouse] could not have been unaware" that Piece Goods furnished its audited financial statements to creditors in the regular course of its business.

Finally, plaintiff cites evidence that the sixth largest check on a list of 50 "held checks" in the 1992 Piece Goods' audit file was a check on Piece Goods' account payable to plaintiff in the amount of $291,337.78. Plaintiff contends that this evidence supports the inference that defendant knew that plaintiff was a member of the group identifiable as Piece Goods' major creditors.

Plaintiff argues that the evidence, when viewed in the light most favorable to plaintiff, creates a genuine issue of fact regarding the requisite element of knowledge as required by the *Restatement* and *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 367 S.E.2d 609 (1988), *appeal after remand,* 101 N.C. App. 1, 398 S.E.2d 889 (1990), *rev'd on other grounds,* 329 N.C. 646, 407 S.E.2d 178 (1991). Accordingly, plaintiff argues that the summary judgment order should be reversed.

Defendant first argues that North Carolina law limits an accountant's liability for negligent misrepresentation to those persons the accountant intends to be able to rely on the information, or those persons the accountant knows his client intends to be able to rely on the information. Defendant maintains that our Supreme Court has specifically rejected the "reasonably foreseeable" test in *Raritan*. Accordingly, defendant argues that it is not enough for plaintiff to show that defendant "should have known" that Piece Goods "might" provide the financial statements to trade creditors like plaintiff. Instead, defendant contends that plaintiff must show that defendant "knew" that Piece Goods intended for trade creditors to rely on the 1992 financial statements in extending credit.

Defendant maintains that plaintiff has not forecast sufficient evidence to show that defendant had the requisite knowledge at the time of the audit. Defendant argues that the memorandum cited by plaintiff "establishes, at most, that Price Waterhouse knew that Piece Goods' audited financial statements were customarily used in a variety of financial transactions by the company and that the financial statements may have been relied upon by lenders, creditors and others in a variety of transactions." Defendant maintains that this evidence is not sufficient to satisfy the requisite element of knowledge and to extend liability for negligent misrepresentation to defendant. *See Raritan*, 322 N.C. at 215 n.2 *(citing Restatement (Second) of Torts* § 552 cmt. h Example 10*)*.

We hold that there is a genuine issue of material fact concerning whether Price Waterhouse knew that Piece Goods supplied the audited financial statements to its creditors in order to buy on credit, and whether Price Waterhouse knew that plaintiff would be included in a limited group to whom the audited financial statement would be supplied. In *Raritan*, our Supreme Court adopted the standard set forth in the Restatement (Second) of Torts § 552 (1977) for determining the scope of accountant's liability to persons other than the client for whom an audit was prepared. Our Supreme Court recognized "that liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *Raritan*, 322 N.C. at 214, 367 S.E.2d at 617. The Court further determined that:

> [t]he Restatement's text does not demand that the accountant be informed by the client himself of the audit report's intended use.

The text requires only that the auditor know that his client intends to supply information to another person or limited group of persons. Whether the auditor acquires this knowledge from his client or elsewhere should make no difference. *If he knows at the time he prepares his report that specific persons, or a limited group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them.*

*Id.* at 215, 367 S.E.2d at 618 (emphasis added).

Plaintiff's evidence creates a genuine issue of material fact regarding Price Waterhouse's knowledge. First, the 25 September 1989 internal memorandum cited by plaintiff creates a genuine issue of material fact concerning Price Waterhouse's knowledge of the intended use of the audited financial statements and whether they were given to creditors to influence decisions on whether to extend credit. Second, plaintiff's inclusion on a list of 50 "held checks" contributes at least to a reasonable inference that Price Waterhouse knew plaintiff was a member of a group identifiable as Piece Goods' major creditors. Third, Price Waterhouse had been retained as Piece Good's accountant and financial adviser for the preceding six years. Accordingly, there is a genuine issue of material fact concerning whether Price Waterhouse knew that Piece Goods supplied the audited financial statements to its creditors in order to buy on credit, and whether Price Waterhouse knew that plaintiff would be included in a limited group to whom that the audited financial statement would be supplied.

## II.

[2] We next consider whether the trial court erred in granting defendant's motion for summary judgment to the extent it is based on the "justifiable reliance" requirement.

Plaintiff first argues that in claims for negligent misrepresentation, "justifiable reliance" is treated under North Carolina law as "reasonable reliance," and reasonable reliance is virtually always a question of fact. *Stanford v. Owens*, 46 N.C. App. 388, 395, 265 S.E.2d 617, 622, *cert. denied*, 301 N.C. 95, 273 S.E.2d 300 (1980). Plaintiff contends that only in "extreme circumstances . . . [can] conduct . . . be considered unreasonable as a matter of law." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 544, 356 S.E.2d 578, 584, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987). Plaintiff maintains

that nothing in the evidence suggests that their reliance on the audited financial statements exhibits "extreme conduct," and therefore summary judgment should not have been granted. Plaintiff further argues that it "in fact obtained the information from which it relied to its detriment from the audited financials and not some other source," and that it has "proffered the requisite 'substantial' evidence upon which reasonable jurors could easily find such actual reliance." Third, plaintiff argues that "[r]eliance on audited financial statements certified by a firm such as Price [Waterhouse], and where information to verify the statements is in Price [Waterhouse's] hands or otherwise unavailable to [plaintiff], is almost presumptively justifiable." Finally, plaintiff contends that "any discrepancies or conflicts" in the evidence "only serve to highlight the fact intensive nature of the 'justifiable reliance' question . . . ." Accordingly, plaintiff maintains that genuine issues of material fact remain on the reliance element and that summary judgment was erroneously granted.

Defendant contends that plaintiff "was aware and understood all of the facts concerning [the] three alleged departures from GAAP." Accordingly, defendant contends that the essential element of justifiable reliance is missing from this case.

First, defendant claims that plaintiff knew that the funds to pay off the receivable from the General Partner would have to come from Piece Goods itself, because the information was disclosed in Note 3 in the financial statements. Note 3 states that "Liquidation of this receivable will be accomplished through future distributions to the general partner." Defendant cites testimony from plaintiff that plaintiff understood Note 3 to mean that the funds to pay off the receivable would have to come from Piece Goods itself. Defendant also refers to the complaint which states that the "the Piece [Goods] July 31, 1992 financial statement, audited by [Price Waterhouse], confirms the worthlessness of the Receivable." Defendant contends that this statement in the complaint is a judicial admission that the 1992 financial statements makes clear that the receivable was worthless. Accordingly, defendant argues that plaintiff could not have justifiably relied on any alleged misrepresentation.

Second, defendant argues that plaintiff was aware and understood the treatment of the accrued interest on the receivable from the General Partner. Defendant claims that treatment of the accrued interest was evident from the face of the financial statements and further that testimony from plaintiff's witnesses establishes that plaintiff was not misled.

Third, defendant maintains that plaintiff's own evidence shows that plaintiff was aware of the treatment of the pattern inventories and understood the alleged misleading effect on working capital. Furthermore, defendant argues that plaintiff "disagreed with the accounting . . . and adjusted for it." Since plaintiff disagreed with and adjusted for the accounting of the pattern inventories, defendant contends that plaintiff cannot now be said to have relied to its disadvantage upon the alleged misrepresentations.

Defendant finally contends that plaintiff was on "inquiry notice" of the facts underlying the alleged misrepresentations since plaintiff knew and understood the accounting practices alleged to violate GAAP and their effect on the 1992 financial statements. Defendant argues that justifiable reliance cannot be shown where the plaintiff is on notice of the facts underlying an alleged misrepresentation. *See APAC-Carolina, Inc. v. Greensboro-High Point Airport Authority*, 110 N.C. App. 664, 680, 431 S.E.2d 508, 517, *cert. denied*, 335 N.C. 171, 438 S.E.2d 197 (1993) (lack of justifiable reliance where plaintiffs had burden of fully inspecting all available information, and inspection would reveal alleged negligent misrepresentation). Furthermore, defendant argues that when the explanatory notes in the financial statements are considered, there is nothing misleading about the alleged misrepresentations at issue. Accordingly, defendant submits that there was no genuine issue of material fact and that summary judgment was properly granted.

We hold that there are genuine issues of material fact concerning plaintiff's understanding of the receivable from the general partner and whether plaintiff justifiably relied on his understanding of the general partner's receivable.

> What is reasonable [reliance] is, as in other cases of negligence, dependent upon the circumstances. It is, in general, a matter of the care and competence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. *The question is one for the jury, unless the facts are so clear as to permit only one conclusion.*

*Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 595-96, 394 S.E.2d 643, 648 (1990), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991) (emphasis added).

In the light most favorable to plaintiff, the facts are not so clear as to permit only a conclusion in favor of defendant. Defendant cites

MARCUS BROS. TEXTILES v. PRICE WATERHOUSE, LLP

[129 N.C. App. 119 (1998)]

testimony that it contends shows that plaintiff knew and understood that the receivable would have to come from Piece Goods itself. However, further review of that testimony in context reveals conflicts that preclude summary judgment. While plaintiff may have understood that the receivable was to be repaid by future distributions, the same agents also testified that the audited financial statements did not lead them to believe that the general partner had no assets at all and that the debt was worthless. James Quinn, plaintiff's Director of Corporate Credit, testified that he understood that the source of funds for repayment of the receivable would be "subsequent distributions to the general partner." However, Quinn also testified that he understood that the receivable "would ultimately be collectible . . . [b]ecause that's what Price Waterhouse said in their audited report." Henry Woodward, plaintiff's Credit Manager, testified that he understood the source of repayment to be "future distributions to the partner." However, Woodward also testified that "there was nothing to indicate in the certified financial statement that this asset had no value . . ." and that if it was worthless "there would at least be a qualified statement in the form of a footnote that this is a certified statement, but qualified [to] the extent that the value of this asset cannot be determinative [sic]." Woodward further testified that footnote 3 meant to him that "[t]here was no question in the CPA's mind that prepared the statement that this receivable would be paid, because that's what it says." Finally, Woodward testified that "if there was any doubt at all . . . that this amount was, in fact, not going to be paid, it should be stipulated in here somewhere in the footnote. It should be stipulated. It's not stipulated."

The conflict in Woodward and Quinn's testimony regarding their understanding of the receivable cannot be appropriately reconciled on a motion for summary judgment. Their testimony must be viewed in the light most favorable to plaintiff. Accordingly, there was a genuine issue of material fact concerning the essential element of justifiable reliance and summary judgment could not properly be granted.

In sum, in the light most favorable to plaintiff, there are genuine issues of material fact concerning the essential elements of knowledge and justifiable reliance. Accordingly, the order granting summary judgment for defendant is reversed.

Reversed and remanded.

Judge WALKER concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

As I do not believe that plaintiff Marcus Brothers Textiles, Inc. ("Marcus") forecasted sufficient evidence to establish either that Price Waterhouse knew the audit would be provided to Marcus for guidance or that Marcus justifiably relied on the alleged misrepresentations, I would affirm the trial court. Accordingly, I respectfully dissent.

I.

To hold an accountant liable for negligent misrepresentation in audited financial statements, a plaintiff must establish that the accountant owed him or her a duty of care. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988). North Carolina follows the *Restatement (Second) of Torts* § 552 definition of an accountant's duty. *Id.* at 214, 367 S.E.2d at 617. Under that test, the accountant's duty extends "not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *Id.* This case involves the latter theory of liability. Thus, on the defendants' motion for summary judgment, Marcus had the burden of bringing forth sufficient evidence that Price Waterhouse knew Piece Goods intended to supply the opinion and audited statements to Marcus for use in deciding whether to extend credit to Piece Goods.

The majority concludes that three items of evidence offered by Marcus were sufficient evidence of knowledge: First, the Price Waterhouse internal memorandum, dated 25 September 1989 and initialed by a partner who worked on the Piece Goods audit, that stated "[Price Waterhouse] has historically reported on the financial statements of [Piece Goods] and . . . vendors and factors are accustomed to receiving [Piece Goods] financial statements . . . ."; Second, Marcus's inclusion on a list of fifty held checks in the 1992 audit as the sixth largest check; Third, Price Waterhouse's employment as Piece Goods's accountant and financial advisor for six years.

None of this evidence, individually or collectively, shows that Price Waterhouse had the knowledge required under the standard detailed by our Supreme Court in *Raritan*. As I have already discussed, there is a limited scope of individuals to whom an accountant owes a duty for negligent misrepresentation in audited financial statements. *Raritan*, 322 N.C. at 214, 367 S.E.2d at 617. The *Raritan* Court held that:

> [I]n fairness accountants should not be liable in circumstances where they are unaware of the use to which their opinions will be put. Instead, their liability should be commensurate with those persons or classes of persons whom they know will rely on their work.

*Id.* at 213, 367 S.E.2d at 616. Thus, liability does not extend to situations where an accountant " 'merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated.' " *Restatement (Second) of Torts* § 552, cmt. h (1977), *quoted in Raritan*, 322 N.C. at 214-15, 367 S.E.2d at 617 (alteration in original).

When it adopted the Restatement's standard, our Supreme Court specifically rejected the alternate "reasonably foreseeable" test, which holds that an accountant owes a duty to all persons whom the accountant could reasonably foresee might obtain and rely on his work. *Raritan*, 322 N.C. at 211, 367 S.E.2d at 615. It also quoted the following example to illustrate the knowledge required in order for a duty to attach:

> A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is not informed of any intended use of the financial statements; but A knows that financial statements, accompanied by an auditor's opinion, are customarily used in a variety of financial transactions by the corporation and that they may be relied upon by lenders, investors . . . and the like . . . . In fact B Company uses the financial statements and accompanying auditor's opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company and through reliance upon it X Bank suffers pecuniary loss. A is not liable to X Bank.

*Restatement (Second) of Torts* § 552, cmt. h, example 10, *quoted in Raritan*, 322 N.C. at 215 n.2, 367 S.E.2d at 617 n.2.

None of the evidence relied upon by the majority establishes that Price Waterhouse had more knowledge of Piece Goods' plans than in the above example. The internal memorandum establishes only that Price Waterhouse knew that outside vendors and creditors received the financial statements it prepared. The fact that the plaintiff was included on a held check list establishes that the plaintiff was one of a fairly sizeable group of creditors. Even when given a plaintiff's due favorable inferences, in my opinion this evidence does not establish any knowledge on the part of Price Waterhouse other than that its financial statements were being used in a variety of financial transactions by Piece Goods, such as the one in which Piece Goods obtained credit from Marcus.

Furthermore, I cannot agree that the length of time that Price Waterhouse served as Piece Goods's financial advisor and auditor is materially relevant. Such evidence by itself is, obviously, not sufficient to establish knowledge, and in combination with speculative evidence is equally insufficient.

To summarize, the law requires that Marcus show that Price Waterhouse knew that the 1992 audit would be provided to Marcus for Marcus's use in deciding to extend credit before establishing a duty. In my opinion, the evidence relied on by the majority at best indicates that Price Waterhouse might possibly have been able to infer this fact, but I do not believe that to be sufficient under our Supreme Court's holding in *Raritan*. As the evidence forecasted by Marcus is legally insufficient to show that Price Waterhouse knew that Marcus would rely on the work to an extent greater than "the ever-present possibility of repetition," *Restatement (Second) of Torts* § 552, cmt. h, *quoted in Raritan*, 322 N.C. at 214, 367 S.E.2d at 617, I believe that summary judgment was appropriate and would affirm the trial court. *See Best v. Perry*, 41 N.C. App. 107, 254 S.E.2d 281 (1979).

II.

I also believe that the plaintiff failed to forecast sufficient evidence of "justifiable reliance." The lack of evidence on this element provides an alternative basis for affirming the trial court's grant of summary judgment sufficient in of itself.

It has been said that justifiable reliance is a very fact-intensive question, on which summary judgment is rarely granted. *See, e.g.,*

*Stanford v. Ownes,* 46 N.C. App. 388, 395, 265 S.E.2d 617, 622, *disc. review denied,* 301 N.C. 95, 273 S.E.2d 300 (1980) ("[I]t is generally for the jury to decide whether plaintiff reasonably relied upon representations made by defendant."). Here, however, I believe that the factual context of this transaction makes it clear that there was an absence of justifiable reliance.

This was a significant transaction by sophisticated parties. Marcus could have, and most likely should have, had an outside party look at the financials before granting close to $300,000 in credit. If Marcus was concerned about items on the financial statement, the time to have voiced those concerns was before it loaned such a large amount. Simply put, I do not think that in a commercial transaction of this scale, saying that you relied upon what the other side told you presents a case of justifiable reliance where the ability to evaluate the relevant information (in this case the financial statements) was apparently equally available to both parties.

As I believe that the evidence forecast by Marcus did not show justifiable reliance, I would affirm the trial court's grant of summary judgment.