MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP

[350 N.C. 214 (1999)]

trial. We further note that defendant has not raised or brought forward in her brief any assignments of error or argument with respect to such findings, conclusions or order of denial, and any matters relating thereto are deemed abandoned. N.C. R. App. P. 28(b)(5).

Accordingly, we hold that defendant's conviction of solicitation to commit murder must be vacated and the judgment thereon arrested, that the judgment on the conspiracy to commit murder conviction must be remanded for resentencing, and that in all other respects defendant has received a fair trial and proper sentence, free of prejudicial error.

NO. 94CRS20532, FIRST-DEGREE MURDER: NO ERROR.

NO. 94CRS56256, SOLICITATION TO COMMIT MURDER: CONVICTION VACATED AND JUDGMENT ARRESTED; CONSPIRACY TO COMMIT MURDER: REMANDED FOR RESENTENCING.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.

═══════════

MARCUS BROTHERS TEXTILES, INC. v. PRICE WATERHOUSE, LLP (FORMERLY PRICE WATERHOUSE), AND JOHN DOES I-V, INDIVIDUALLY AND AS MEMBERS OF PRICE WATERHOUSE

No. 188A98

(Filed 9 April 1999)

### 1. Accountants and Accounting— negligent misrepresentation—audited financial statement—knowledge of use

The trial court erred by granting summary judgment for defendant in a negligent misrepresentation action against an accounting firm arising from an audited financial statement where, viewing the evidence in the light most favorable to plaintiffs, it can be inferred that defendant knew that its client (Piece Goods) regularly provided copies of its financial statements to a limited group of major trade creditors, of which plaintiff was a member.

**MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP**

[350 N.C. 214 (1999)]

**2. Accountants and Accounting— negligent misrepresentation—audited financial statement—justifiable reliance—summary judgment**

The trial court erred by granting summary judgment for defendant in a negligent misrepresentation action against an accounting firm arising from an audited financial statement where the evidence was sufficient to create a genuine issue of material fact with regard to plaintiff's justifiable reliance on the statement in its decision to extend credit.

Chief Justice MITCHELL dissenting.

Justice PARKER joins in this dissenting opinion.

Appeal by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 129 N.C. App. 119, 498 S.E.2d 196 (1998), reversing an order of summary judgment in favor of defendant entered by Freeman, J., on 9 December 1996 in Superior Court, Forsyth County. Heard in the Supreme Court 11 January 1999.

*White and Crumpler, by Dudley A. Witt and Laurie A. Schlossberg, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Hada V. Haulsee and John J. Bowers; Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr., Thomas D. Myrick, and Corby Anderson; and Steven M. Witzel, pro hac vice, for defendant-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by L.P. McLendon, Jr., James T. Williams, Jr., and Jennifer L. Bolick, on behalf of the American Institute of Certified Public Accountants, amicus curiae.*

WAINWRIGHT, Justice.

Plaintiff Marcus Brothers Textiles, Inc. (Marcus Brothers) is a New York-based converter of textiles that buys unfinished woven material, has it finished by independent contractors, and sells it to apparel manufacturers or retailers of fabric for home sewing. Prior to filing for bankruptcy in 1993, Piece Goods Shops Company, L.P. (Piece Goods) was a North Carolina-based retailer of fabrics, patterns, sewing notions, needlecraft supplies, and sewing machines. Piece Goods was a frequent customer of Marcus Brothers. Defendant Price Waterhouse, LLP (Price Waterhouse) is an independent certi-

fied public accounting firm with offices in North Carolina and was hired by Piece Goods to perform audits of its year-end financial statements. Price Waterhouse provided financial services for Piece Goods from 1986 until 1993, and performed audits of Piece Goods' financial statements for the fiscal years 1989 through 1992.

At the close of the fiscal year on 31 July 1992, Piece Goods prepared its year-end financial statement (1992 financial statement). As in the past, Piece Goods hired Price Waterhouse to perform an audit on the 1992 financial statement. On 22 September 1992, following the audit, Price Waterhouse sent a letter to Piece Goods in which it stated:

> In our opinion, the accompanying balance sheet and the related statements of income and partners' equity and of cash flows present fairly, in all material respects, the financial position of Piece Goods . . . at July 31, 1992 and 1991 and the results of its operations and its cash flows for the years then ended in conformity with generally accepted accounting principles.

Thereafter, Piece Goods forwarded a copy of the audited 1992 financial statement to Marcus Brothers on 29 October 1992. Marcus Brothers contends that as a result of its review of the audited 1992 financial statement, it made several extensions of credit to Piece Goods during the period from 30 December 1992 to 5 April 1993 (credit extensions).

On 19 April 1993, Piece Goods filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of North Carolina. At that time, Piece Goods was indebted to Marcus Brothers in the amount of $288,848.14 as a result of the credit extensions.

On 11 August 1995, Marcus Brothers filed its complaint against Price Waterhouse and five unnamed employees of Price Waterhouse, alleging gross negligence and negligent misrepresentation based on its audit of the 1992 financial statement. Marcus Brothers alleges the audited financial statement "included [Price Waterhouse's] unqualified opinion that the Financial Statement fairly and in all material respects accurately presented [Piece Goods'] financial position, the results of its operations, and its cash flows for the relevant years." Marcus Brothers alleges the 1992 financial statement audited by Price Waterhouse contained several material misrepresentations and reflected numerous departures from Generally Accepted Accounting

**MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP**

[350 N.C. 214 (1999)]

Principles ("GAAP"), and that Price Waterhouse's failure to alert readers of the financial statement to those departures violated Generally Accepted Auditing Standards ("GAAS").

Marcus Brothers contends the audited 1992 financial statement contained three material misrepresentations about Piece Goods' financial condition: (1) it showed a thirty million, three hundred thirty-two thousand dollar ($30,332,000.00) receivable from a Piece Goods general partner which was uncollectible; (2) it included interest on the worthless $30,332,000.00 receivable; and (3) it incorrectly reflected nearly all payables for certain pattern inventories as non-current, long-term liabilities, but reflected the inventories for those pattern inventories as current assets. Marcus Brothers claims the result was to overstate Piece Goods' working capital and distort Piece Goods' current working capital ratio.

On 5 June 1996, Price Waterhouse filed a motion for summary judgment, alleging that Marcus Brothers had failed to establish certain required elements of negligent misrepresentation, including: (1) Price Waterhouse's knowledge that Piece Goods would be supplying Marcus Brothers with the audited 1992 financial statement; and (2) Marcus Brothers' justifiable reliance upon the audited 1992 financial statement.

Following a hearing on 14 October 1996, the trial court granted Price Waterhouse's motion for summary judgment on 9 December 1996, and Marcus Brothers filed a timely notice of appeal to the Court of Appeals. A divided panel of the Court of Appeals issued an opinion on 7 April 1998 in which the order of summary judgment in favor of Price Waterhouse was reversed. The majority found that "in the light most favorable to plaintiff, there are genuine issues of material fact concerning the essential elements of knowledge and justifiable reliance." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 129 N.C. App. 119, 127, 498 S.E.2d 196, 202 (1998). The Court of Appeals dissent stated that Marcus Brothers had failed to forecast "sufficient evidence to establish either that Price Waterhouse knew the audit would be provided to Marcus [Brothers] for guidance or that Marcus [Brothers] justifiably relied on the alleged misrepresentations." *Id.* at 128, 498 S.E.2d at 202 (Wynn, J., dissenting). Based on this dissent, Price Waterhouse filed a timely notice of appeal as of right to this Court pursuant to N.C.G.S. § 7A-30(2).

At the outset, we note that although a company's "financial statements themselves are the representations of management, not the

auditor," "an audit report represents the auditor's opinion of the accuracy of the client's financial statements at a given period of time." *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 207, 367 S.E.2d 609, 613 (1988). As such, the responsibility an auditor assumes in conducting an audit and preparing a report should not be taken lightly.

The issue of the scope of an accountant's liability to persons other than the client for whom an audit report was prepared is relatively new in the annals of North Carolina jurisprudence. This Court first addressed the issue in 1988 in *Raritan,* 322 N.C. 200, 367 S.E.2d 609. In *Raritan,* this Court stated that under certain circumstances, the tort of negligent misrepresentation set forth in section 552 of the Restatement (Second) of Torts could provide an appropriate remedy to plaintiffs who had been injured as a result of an accountant's negligence. Section 552 provides:

> Information Negligently Supplied for the Guidance of Others

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

>    (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

>    (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977). According to this Court in *Raritan,* the Restatement approach

> recognizes that liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends

**MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP**

[350 N.C. 214 (1999)]

will rely on his opinion, or whom he knows his client intends will so rely. On the other hand, as the commentary [to section 552] makes clear, it prevents extension of liability in situations where the accountant "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated." *Restatement (Second) of Torts* § 552, Comment h. As such it balances . . . the need to hold accountants to a standard that accounts for their contemporary role in the financial world with the need to protect them from liability that unreasonably exceeds the bounds of their real undertaking.

*Raritan*, 322 N.C. at 214-15, 367 S.E.2d at 617.

Under this approach, in order for an auditor to be held liable to a third party, that party must demonstrate: (1) the accountant either (a) knew that the third party would rely on this information, or (b) knew that the client for whom the audit report was prepared intended to supply the information to a third party who would rely on this information; and (2) the third party justifiably relied upon this information in its decision concerning the transaction involved or one substantially similar to it. *Id.* at 210, 367 S.E.2d at 614. In adopting this rule, in *Raritan* this Court "rejected as too expansive the position that extends liability to all persons the accountant should reasonably foresee might obtain and rely on the information generated." David A. Logan & Wayne A. Logan, *North Carolina Torts* § 25.30, at 549 (1996) [hereinafter Logan, *N.C. Torts*]. Further, the Court held:

We reject the . . . "privity or near-privity" approach . . . because it provides inadequately for the central role independent accountants play in the financial world. Accountants' audit opinions are increasingly relied upon by the investing and lending public in making financial decisions.

*Raritan*, 322 N.C. at 211, 367 S.E.2d at 615.

On appeal, Price Waterhouse contends the Court of Appeals erred by reversing the trial court's entry of summary judgment in its favor because there are no genuine issues of material fact with regard to both the knowledge and the reliance elements.

A close review of the principles of summary judgment is instructive in this case. It is well settled that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is *no* genuine issue as to *any* material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1990) (emphasis added). The movant must clearly demonstrate the lack of any triable issue of fact and entitlement to judgment as a matter of law. *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 85, 249 S.E.2d 375, 378 (1978), *overruled on other grounds by Best v. Duke University*, 337 N.C. 742, 448 S.E.2d 506 (1994). The record is considered in the light most favorable to the party opposing the motion. *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975). Generally, " 'issues of negligence . . . are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner.' " *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972) (citations omitted). "It is only in exceptional negligence cases that summary judgment is appropriate." *Id.* " '[A]ll inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion.' " *Id.* (citations omitted).

Rule 56 "does not contemplate that the Court will decide an issue of fact, but rather will determine whether a real issue of fact exists." *Kessing v. Nat'l Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971) (citations omitted). Because "this rule provides a somewhat drastic remedy, it must be used with due regard to its purposes and a cautious observance of its requirements in order that no person shall be deprived of a trial on a genuine disputed factual issue." *Id.* Determining what constitutes a genuine issue of material fact is often difficult. *Id.* If there is any question as to the weight of evidence, summary judgment should be denied. *Id.* at 535, 180 S.E.2d at 830.

In negligent misrepresentation cases, "whether liability accrues is highly fact-dependent, with the question of whether a duty is owed a particular plaintiff being of paramount importance." Logan, *N.C. Torts* § 25.30, at 551. As such, summary judgment is seldom appropriate in these type of cases, " 'unless the evidence is free of material conflict, and the only reasonable inference that can be drawn therefrom is that there was no negligence on the part of defendant, or that his negligence was not the proximate cause of the injury.' " *Alva v. Cloninger*, 51 N.C. App. 602, 609, 277 S.E.2d 535, 539-40 (1981) (quoting *Price v. Miller*, 271 N.C. 690, 693, 157 S.E.2d 347, 349-50 (1967)).

## I. The Knowledge Element

[1] First, we must determine whether the evidence presented is sufficient to create a genuine issue of material fact that Price

MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP

[350 N.C. 214 (1999)]

Waterhouse knew either that Marcus Brothers would rely on the 1992 audited financial statement in its decision to extend credit to Piece Goods, or that Piece Goods would supply the information to Marcus Brothers intending Marcus Brothers would rely on this information in its decision to extend credit to Piece Goods.

In support of its case, Marcus Brothers cites numerous circumstances which indicate genuine issues of material fact as to the knowledge element. First, there is unrefuted testimony that Piece Goods had been a client of Price Waterhouse since 1986. In addition, there is deposition testimony from James J. Quinn, Director of Corporate Credit for Marcus Brothers, indicating that Piece Goods has been sending its audited financial statements to Marcus Brothers since 1983, and that these financial statements were regularly used in determining whether to extend credit to Piece Goods. Price Waterhouse's own internal 1989 memorandum states that "[Price Waterhouse] has historically reported on the financial statements of [Piece Goods,] and . . . vendors . . . are accustomed to receiving [Piece Goods'] financial statement." Further, deposition testimony from Robert Allen Smith, an audit partner for Price Waterhouse who signed off on the 1989 internal memorandum, indicates that some of Price Waterhouse's clients "typically provide" their audited financial statements to trade creditors in reference to obtaining loans or extensions of credit. There is further deposition testimony from Karen C. Frazier, an audit manager for Price Waterhouse who oversaw the audit of Piece Goods' 1992 financial statement, which indicates that audited financial statements are "used by the management of the company and possibly outsiders," and that such outsiders "could" include trade creditors such as Marcus Brothers. Marcus Brothers further cites the fact that the sixth largest check on a handwritten list of fifty "held checks" in Price Waterhouse's 1992 Piece Goods audit file is a check to Marcus Brothers in the amount of $291,337.78. Finally, Piece Goods' 1993 bankruptcy filing revealed that forty-three trade creditors had received copies of Piece Goods' audited financial statements, including Marcus Brothers.

For summary judgment, the movant is held to a strict standard in all cases and " 'all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion.' " *Page*, 281 N.C. at 706, 190 S.E.2d at 194 (citation omitted). Reasonable persons can reach different conclusions on the evidentiary material offered. *Id.* at 708, 190 S.E.2d at 195. Summary judgment is inappropriate where reasonable minds might

easily differ as to the import of the evidence. *Dettor v. BHI Property Company No. 101*, 324 N.C. 518, 522, 379 S.E.2d 851, 853 (1989).

For the element of knowledge, the material issues of fact demonstrate that the movants have failed to satisfy the burden of clearly establishing the lack of any triable issue of fact in the record properly before the Court. Whether the case should be submitted to the jury is a question for determination by the trial judge at the close of the evidence.

In *Raritan*, this Court, as previously noted, adopted the Restatement (Second) of Torts § 552. Included in the commentary to Section 552 is illustration 10 under comment h which provides:

> A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is *not informed* of *any* intended use of the financial statements; but A knows that the financial statements, accompanied by an auditor's opinion, are *customarily* used in a variety of financial transactions by the corporation and that they may be relied upon by lenders, investors . . . and the like . . . . In fact B Company uses the financial statements and accompanying auditor's opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company, and through reliance upon it X Bank suffers pecuniary loss. A is not liable to X Bank.

Restatement (Second) of Torts § 552, cmt. h, illus. 10 (1977) (quoted in *Raritan*, 322 N.C. at 215 n.2, 367 S.E.2d at 617 n.2) (emphasis added). As stated in *Raritan*, "[s]ome confusion arises due to illustration 10 under Comment h. This illustration has been read by some to mean that liability turns on whether the accountant's client specifically mentions a person or class of persons who are to receive the audited financial statements." *Raritan*, 322 N.C. at 215, 367 S.E.2d at 617-18.

> The Restatement's text does not demand that the accountant be informed by the client himself of the audit report's intended use. The text requires only that the auditor *know* that his client intends to supply information to another person or limited group of persons. Whether the auditor acquires this knowledge from his

**MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP**

[350 N.C. 214 (1999)]

client or elsewhere should make no difference. *If he knows at the time he prepares his report that specific persons, or a limited group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them.*

*Id.* at 215, 367 S.E.2d at 618 (emphasis added).

The facts of the instant case are distinguishable from *Raritan* and illustration 10. Upon remand in *Raritan Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 497 S.E.2d 178 (1991) (*Raritan* II), this Court noted some additional facts about the parties which are particularly relevant to our discussion. In *Raritan* II, this Court noted that the third-party creditor did not see the audit but reviewed a summary of it published in a Dun & Bradstreet report, which apparently overstated the corporation's actual financial position. *Id.* at 647, 497 S.E.2d at 179. Allegedly, on the basis of the Dun & Bradstreet summary of the audit, the trade creditor extended additional open credit to the corporation, which later filed for bankruptcy. *Id.* It is interesting to note that the accounting firm's engagement letter to the client provided: "[I]f we discover that we cannot issue an unqualified opinion, we will discuss the reasons with you before submitting a different kind of report . . . . Our basic audit function is to add reliability to those financial statements." *Id.* at 648, 407 S.E.2d at 179. The Dun & Bradstreet report, which also contained other summarized financial information, was the only access that the third-party creditor had to the corporation's financial statements. *Id.* at 649, 407 S.E.2d at 180. The creditor was not even aware that the audit was being performed. *Id.* at 653, 407 S.E.2d at 182.

As illustration 10 clearly states, A was *not informed of any intended use* of the financial statements. In the light most favorable to Marcus Brothers, there are genuine issues of material fact as to whether Price Waterhouse was informed of any intended use of the financial statements. Illustration 10 further states: "[B]ut A knows that the financial statements, accompanied by an auditor's opinion, are *customarily* used in a variety of financial transactions by the corporation and that they may be relied upon by lenders . . . ." (Emphasis added.) In the instant case, the circumstances surrounding Price Waterhouse's knowledge raise issues of material fact that rise above the level of "customarily used." As previously stated, all inferences of fact from the proofs proffered at the summary judgment hearing must be drawn against the movant and summary judgment is

inappropriate where reasonable minds might easily differ as to the import of the evidence. *Page*, 281 N.C. at 706, 190 S.E.2d at 194. " 'The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.' " *Jenrette Transport Co. v. Atlantic Fire Ins. Co.*, 236 N.C. 534, 540, 73 S.E.2d 481, 486 (1952) (citation omitted). This Court has recently reiterated the strict standards by which the propriety of summary judgment is determined:

> Before summary judgment may be entered, it must be *clearly established* by the record before the trial court that there is a lack of *any* triable issue of fact. In making this determination, the evidence forecast by the party against whom summary judgment is contemplated is to be *indulgently regarded*, while that of the party to benefit from summary judgment must be *carefully scrutinized*. Further, any doubt as to the existence of an issue of triable fact must be resolved in favor of the party against whom summary judgment is contemplated.

*Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998) (emphasis added) (citations omitted).

At this stage of the proceedings, and after carefully reviewing the foregoing evidence in the light most favorable to Marcus Brothers, we conclude it can reasonably be inferred that Price Waterhouse knew Piece Goods regularly provided copies of its financial statements to a limited group of major trade creditors, of which group Marcus Brothers was a member.

## II. The Reliance Element

[2] Next, we must determine whether the evidence presented is sufficient to create a genuine issue of material fact with regard to the second element of negligent misrepresentation, that is, Marcus Brothers' justifiable reliance upon the 1992 audited financial statement in its decision to extend credit to Piece Goods.

At the outset, we note that the "question of justifiable reliance is analogous to that of reasonable reliance in fraud actions, where it is generally for the jury to decide whether plaintiff reasonably relied upon the representations made by defendant." *Stanford v. Owens*, 46 N.C. App. 388, 395, 265 S.E.2d 617, 622, *disc. rev. denied*, 301 N.C. 95 (1980). "Ordinarily, the question of whether an actor is reasonable in

**MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP**

[350 N.C. 214 (1999)]

relying on the representations of another is a matter for the finder of fact." *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 544, 356 S.E.2d 578, 584 (1987). Further, the commentary to section 552 of the Restatement (Second) of Torts provides:

> What is reasonable is, as in other cases of negligence, dependent upon the circumstances. It is, in general, a matter of the care and competence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. *The question is one for the jury, unless the facts are so clear as to permit only one conclusion.*

Restatement (Second) of Torts § 552 cmt. e (emphasis added).

In the light most favorable to Marcus Brothers, the facts are not so clear as to permit only a conclusion in favor of Price Waterhouse. Price Waterhouse contends that testimony showed Marcus Brothers knew and understood that the approximately thirty million dollars receivable would have to come from Piece Goods itself. This information was disclosed in footnote 3 in the financial statements. Footnote 3 states that "[l]iquidation of this receivable will be accomplished through future distributions to the general partner." However, further review of that testimony in context reveals conflicts that preclude summary judgment. While Marcus Brothers may have understood the receivable was to be repaid by future distributions, the same agents also testified that the audited financial statements did not lead them to believe the general partner had no assets at all and that the debt was worthless. James Quinn, Marcus Brothers' Director of Corporate Credit, testified that he understood the source of funds for repayment of the receivable would be "subsequent distributions to the general partner." However, Quinn also testified that he understood the receivable "would ultimately be collectible . . . [b]ecause that's what Price Waterhouse said in their audited report." Henry Woodward, Marcus Brothers' Credit Manager, testified he understood the source of repayment to be "future distributions to the partner." However, Woodward also testified "there was nothing to indicate in the certified financial statement that this asset had no value . . ." and if it was worthless, "there would at least be a qualified statement in the form of a footnote that this is a certified statement, but qualified [to] the extent that the value of this asset cannot be determinative [sic]." Woodward further testified that footnote 3 meant to him "[t]here was no question in the CPA's mind that prepared the state-

ment that this receivable would be paid, because that's what it says." Finally, Woodward testified that "if there was any doubt at all . . . that this amount was, in fact, not going to be paid, it should be stipulated in here somewhere in the footnote. It should be stipulated. It's not stipulated." The conflict in Woodward's and Quinn's testimonies regarding their understanding of the receivable cannot be appropriately reconciled on a motion for summary judgment.

Marcus Brothers alleged and made a forecast of evidence that it made several extensions of credit to Piece Goods in reliance upon the audited 1992 financial statement. Whether Marcus Brothers justifiably relied on the $30,332,000.00 receivable from a Piece Goods general partner, the accompanying interest, and current inventory are questions of fact for a jury to determine. We conclude that Marcus Brothers presented a sufficient forecast of evidence to meet this element.

In summary, we conclude the Court of Appeals properly reversed the trial court's entry of summary judgment for Price Waterhouse on Marcus Brothers' claim for negligent misrepresentation.

AFFIRMED.

Chief Justice MITCHELL dissenting.

I do not believe that plaintiff Marcus Brothers Textiles, Inc. (Marcus Brothers) forecast substantial evidence tending to show that defendant Price Waterhouse, LLP (Price Waterhouse) *knew* that the audited 1992 financial statement of Piece Goods Shops Company, L.P. (Piece Goods) would be provided to Marcus Brothers or a *limited* group of creditors of which Marcus Brothers was a member. Therefore, I would reverse the decision of the Court of Appeals and remand this case to the trial court for reinstatement of summary judgment in favor of defendant Price Waterhouse. Accordingly, I respectfully dissent from the decision of the majority.

The "actual knowledge" standard controlling an accountant's liability to a third party non-client for negligent misrepresentation of the financial statements of the accountant's client was established by this Court in *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609 (1988). In adopting the actual knowledge standard, this Court expressly rejected the "reasonably foreseeable" standard, "because it would result in liability more expansive than an accountant should be expected to bear." *Id.* at 211, 367 S.E.2d at 615.

**MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP**

[350 N.C. 214 (1999)]

Therefore, we have rejected the notion that an accountant's liability may be extended in cases such as the present case to all persons that the accountant could reasonably foresee might obtain and rely on his work. Thus, the proper standard is not what the accountant reasonably should have known, but what the accountant in fact knew.

In adopting the actual knowledge standard in *Raritan*, this Court expressly relied upon the rationale of Section 552 of the Restatement (Second) of Torts. We explained that rationale as follows:

> [A]n accountant who audits or prepares financial information for a client owes a duty of care not only to the client but to any other person, or one of a group of persons, whom the accountant or his client intends the information to benefit; and that person reasonably relies on the information in a transaction, or one substantially similar to it, that the accountant or his client intends the information to influence. If the requisite intent is that of the *client* and not the accountant, then the accountant must *know* of his *client's intent* at the time the accountant audits or prepares the information.

*Id.* at 210, 367 S.E.2d at 614 (emphasis added). We also explained in *Raritan* that if an accountant

> knows at the time he prepares his report that specific persons, or a *limited* group of persons, will rely on his work, and intends or knows that his client intends such reliance, his duty of care should extend to them.

*Id.* at 215, 367 S.E.2d at 618 (emphasis added). Here, no evidence whatsoever was forecast tending to show that Price Waterhouse itself intended to influence plaintiff Marcus Brothers. Therefore, the issue presented by this case is whether Price Waterhouse knew of Piece Goods' intent to provide Marcus Brothers with the 1992 financial statement for the purpose of influencing Marcus Brothers, or a limited group including Marcus Brothers, in the transactions at issue in this case or in substantially similar transactions. *Id.* I find nothing in the evidence to support a reasonable fact finder in finding that defendant Price Waterhouse possessed such actual knowledge at the time it performed the work in question for Piece Goods.

At most, the evidence forecast before the trial court and set forth by the majority in its opinion here might support a finding that Price Waterhouse could reasonably have foreseen that Marcus Brothers or an indeterminate group of persons including Marcus Brothers would

rely on its work and that Piece Goods intended such reliance. However, the forecast of evidence relied upon by the majority does no more than raise suspicion or conjecture as to the determinative issue before this Court—whether defendant Price Waterhouse *actually* knew that Marcus Brothers or a *limited* group including Marcus Brothers would rely on its work and that its client Piece Goods intended such reliance. Evidence "must do more than raise a suspicion, conjecture, guess, surmise, or speculation as to the pertinent facts in order to justify its submission to the jury." *Jenrette Transp. Co. v. Atlantic Fire Ins. Co.*, 236 N.C. 534, 539, 73 S.E.2d 481, 485 (1952); *see also Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 68, 414 S.E.2d 339, 345 (1992). Even if it is assumed *arguendo* that defendant Price Waterhouse had knowledge from which it could reasonably have foreseen that its work would be relied on by an unlimited group of potential trade creditors of Piece Goods, this fact would not suffice to defeat defendant Price Waterhouse's motion for summary judgment.

I recognize that ordinarily the Restatement of Torts is secondary authority at best, as it is not the law of North Carolina. However, in *Raritan* this Court adopted the standard required by the Restatement (Second) of Torts § 552 as a part of the common law of North Carolina. Therefore, the Commentary to Section 552 and the included examples are unusually persuasive authority regarding the knowledge required on the part of an accountant in order for the accountant to have a duty to those not his clients. In this regard, illustration 10 under comment h provides as follows:

> A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is not informed of any intended use of the financial statements; but A knows that the financial statements, accompanied by an auditor's opinion, are customarily used in a variety of financial transactions by the corporation and that they may be relied upon by lenders, investors . . . and the like . . . . In fact B Company uses the financial statements and accompanying auditor's opinion to obtain financial statements and accompanying auditor's opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company, and through reliance upon it X Bank suffers pecuniary loss. A is not liable to X Bank.

MARCUS BROS. TEXTILES, INC. v. PRICE WATERHOUSE, LLP

[350 N.C. 214 (1999)]

Restatement (Second) of Torts § 552, cmt. h, illus. 10 (1977), *quoted in Raritan*, 322 N.C. at 215 n.2, 367 S.E.2d at 617 n.2. None of the evidence relied upon by the majority tends to establish that Price Waterhouse had more knowledge of Piece Goods' plans than that illustrated in the above example.

The 1989 internal memorandum of Price Waterhouse relied upon by the majority merely stated that Price Waterhouse had "historically reported on the financial statements of" Piece Goods and that "vendors and factors" were accustomed to receiving Piece Goods' financial statements. Giving this memorandum every possible reasonable inference in favor of plaintiff, it still tends to show only that *four years later*, Price Waterhouse might reasonably have foreseen that an indeterminate group of outside vendors and creditors would receive the 1992 statement it prepared for Piece Goods. Piece Goods' 1993 bankruptcy filing listed several hundred creditors, a group which could not reasonably be found to be a *limited* group of which Marcus Brothers was a member. The information contained in the 1989 memorandum, even when taken in the light most favorable to plaintiff, could not reasonably be found to identify the type of limited group required to meet the standard established by *Raritan* and the Restatement. *See Venturtech II v. Deloitte Haskins & Sells*, 790 F. Supp. 576, 583 (E.D.N.C. 1992) (similar internal memorandum created in connection with a prior audit held insufficient to establish a "limited group of persons whom [the auditor] knew would rely on its work" or to establish the state of the auditor's knowledge four years after the memorandum was prepared), *aff'd sub nom. Heritage Capital Corp. v. Deloitte, Haskins & Sells*, 993 F.2d 228 (4th Cir. 1993), *cert. denied*, 511 U.S. 1051, 128 L. Ed. 2d 338 (1994); *Bank of New Orleans & Trust Co. v. Monco Agency Inc.*, 719 F. Supp. 1328 (E.D. La. 1989) (auditor's knowledge of use of an earlier audit held insufficient to establish such knowledge as to later audit, and the auditor's knowledge that its report was being given to one bank coupled with the client's request for fifty copies of the audit was insufficient to establish knowledge that the audit would also be given to the plaintiff bank), *aff'd sub nom. First Nat'l Bank of Commerce v. Monco Agency Inc.*, 911 F.2d 1053 (5th Cir. 1990). To conclude, as the majority does here, that the 1989 memorandum is sufficient to support a finding that Price Waterhouse knew that plaintiff Marcus Brothers was a member of a *"limited group"* to whom copies of the 1992 financial statement would be provided is to conclude that an auditor who knows that his client provides financial statements to some unspecified and indeterminate group may be held liable to all of

the client's present or future creditors without limitation. The effect is to hold accountants such as defendant Price Waterhouse liable to all "reasonably foreseeable" recipients of its audit reports, a result directly contrary to the standard of liability established in *Raritan* and the Restatement.

The deposition testimony of Karen C. Frazier, an audit manager of the 1992 Piece Goods audit, is of even less help to plaintiff. She testified only as to general business practices in the industry of which Piece Goods was a part. She stated in response to a question that, "[a]s far as having an audited financial, you have an outside opinion on the financial statements that you have prepared internally to be used by the management of the company and possibly outsiders." When asked whether such "outsiders" could include trade creditors, she responded, "[i]t could." When asked whether in Piece Goods' situation outsiders would include suppliers of material, inventory and patterns, she replied that "[i]t could; yes." Given any fair construction, Ms. Frazier's deposition testimony tended to show merely that businesses in the same industry as Piece Goods "could" "possibly" provide their audited financial statements to an indeterminate and unspecified group of outsiders. Again, such evidence would at best support suspicion, speculation or conjecture as to what defendant Price Waterhouse actually knew.

The fact that plaintiff Marcus Brothers was included on a held check list also tends to show only that it was one of an *indeterminate* group of potential creditors. No evidence was forecast which could do more than create suspicion, speculation or conjecture as to whether Price Waterhouse *actually knew* that Piece Goods intended to provide the 1992 financial statements to Marcus Brothers, or to a *limited* group of which Marcus Brothers was a member, for the purpose of influencing a specific transaction or one substantially similar to any such specific transaction. This being the case, the trial court properly granted summary judgment for defendant Price Waterhouse.

In *Raritan*, this Court carefully considered the views of a legal scholar and jurist of extraordinary renown, Judge Cardozo of the New York Court of Appeals.

It is instructive that Judge Cardozo, the architect of reasonable foreseeability as the touchstone for products liability, *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), declined to adopt the same standard for accountants' liability in *Ultramares.* Judge Cardozo distinguished accountants

from manufacturers because of the potential for excessive accountants' liability. He wrote that if accountants could be held liable for negligence by those who were not in privity, or nearly in privity, accountants would face "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. [170,] 179-80, 174 N.E. [441,] 444 [(1931)]. Because of this potential for inordinate liability Judge Cardozo concluded, as do we, that accountants should be held liable to a narrower class of plaintiffs than the class embraced by the reasonable foreseeability test.

*Raritan*, 322 N.C. at 213-14, 367 S.E.2d at 616-17. Although I am certain beyond all doubt that the majority has attempted in good faith to apply the actual knowledge test required by *Raritan*, its decision in this case allows a forecast of evidence to suffice which at best meets the reasonably foreseeable standard expressly rejected in *Raritan*. The result is to subject accountants such as Price Waterhouse to liability to an indeterminate class, for an indeterminate time, in an indeterminate amount, despite Judge Cardozo's warning and this Court's expressly stated desire in *Raritan* to avoid any such result. Therefore, I must respectfully dissent.

Justice PARKER joins in this dissenting opinion.