Jacobson v. Walsh, 2014 NCBC 2.

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG
IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 9619

STEVEN W. JACOBSON, individually and derivatively on behalf of JWJ Coastal Properties, LLC,

Plaintiff,

v.

JAMES F. WALSH, JR., ANDREW S. JACOBSON, and JWJ COASTAL PROPERTIES, LLC,

Defendants.

**ORDER AND OPINION**

*McAngus, Goudelock & Courie, LLC by John T. Jeffries for Plaintiff.*

*James, McElroy & Diehl, P.A. by John R. Buric and Harrison Lord for Defendants.*

Murphy, Judge.

**THIS MATTER** is before the Court on James F. Walsh, Jr. ("Walsh"), Andrew S. Jacobson ("A. Jacobson"), and JWJ Coastal Properties, LLC's ("Coastal") (collectively, "Defendants") Motion for Summary Judgment as to all claims, pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Motion I").

As part of Motion I, Walsh seeks summary judgment on his counterclaims for sanctions under Rule 11 of the North Carolina Rules of Civil Procedure and for attorney's fees pursuant to N.C.G.S. § 6-21.5. In North Carolina, a motion is the appropriate vehicle by which a party requests sanctions under Rule 11. *See* N.C. GEN. STAT. § 1A-1, Rule 11 (2013) ("If a pleading, motion, or other paper is signed in violation of this rule, the court, *upon motion* or upon its own initiative, shall impose upon the person who signed it . . . an appropriate sanction . . . ."). The same is true for a party to receive attorney's fees under N.C.G.S. § 6-21.5. *See* N.C. GEN. STAT. § 6-21.5 (2013) ("In any civil action . . . the court, *upon motion* of the prevailing party, may award a reasonable attorney's fee to the prevailing party . . . ."). To efficiently resolve all matters raised herein, the Court considers Defendants' motion for

summary judgment on Walsh's counterclaims as a motion for sanctions pursuant to Rule 11 ("Motion II") and a motion for attorney's fees pursuant to N.C.G.S. § 6-21.5 ("Motion III").

Having considered the briefs and submissions of the parties, and the arguments and contentions of counsel at the October 26, 2012, hearing, the Court **GRANTS** Motion I, **DENIES** Motion II, and **GRANTS** in part and **DENIES** in part Motion III, for the reasons that follow.

## I.
## JURISDICTIONAL PRE-REQUISITES

{1}     Plaintiff Steven W. Jacobson ("S. Jacobson" or "Plaintiff") is a citizen and resident of the State of Florida.

{2}     Defendant A. Jacobson is a citizen and resident of Mecklenburg County, North Carolina.

{3}     Defendant Walsh is a citizen and resident of Mecklenburg County, North Carolina.

{4}     Defendant Coastal is a limited liability company organized under the laws of the State of North Carolina with its registered office located in Charlotte, North Carolina.

## II.
## PROCEDURAL HISTORY

{5}     Plaintiff filed his original, unverified Complaint in Mecklenburg County Superior Court on April 30, 2010, alleging individual causes of action against A. Jacobson and Walsh for unfair and deceptive trade practices, fraud, fraudulent concealment, fraudulent misrepresentation, breach of contract, and breach of fiduciary duty; and seeking punitive damages, and dissolution of Coastal.

{6}     Plaintiff also alleges claims derivatively on behalf of Coastal against A. Jacobson and Walsh for breach of fiduciary duty, negligence, negligent misrepresentation, fraud, and fraudulent misrepresentation; and sought an accounting, inspection of corporate records, and dissolution of Coastal.

{7}    On July 1, 2010, Defendants A. Jacobson and Coastal filed their Answer to the Complaint.

{8}    On March 30, 2011, Defendant Walsh filed his Answer and Counterclaims, and requested Rule 11 sanctions and attorney's fees pursuant to N.C.G.S. § 6-21.5.

{9}    Plaintiff answered Walsh's counterclaims on May 31, 2011, and Defendants filed their Motion for Summary Judgment as to all claims in the Complaint, along with supporting brief, affidavit and deposition exhibits on May 31, 2012.

{10}    Plaintiff filed a responsive brief, with supporting documents, on August 1, 2012, and Defendants filed their reply brief on August 10, 2012.

{11}    The Court heard oral arguments on the Motions on October 26, 2012.

III.

FACTUAL BACKGROUND

{12}    The Court recites material and uncontroverted facts from the record for the purpose of deciding the motion and not to resolve issues of material fact. *See Collier v. Collier*, 204 N.C. App. 160, 161–62, 693 S.E.2d 250, 252 (2010) (citing *Hyde Ins. Agency v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164–65 (1975)).

{13}    Between July 25, 2005 and December 1, 2005, Defendants and their wives purchased as investment properties four lots in Carteret County, North Carolina (the "Cannonsgate" lots) and two lots in Beaufort County, South Carolina (the "Bull Point" lots). All purchases were made with personal funds and on the individual credit of the purchasers. (Pl.'s Resp. Mot. I 1–2). Only A. Jacobson and Walsh were obligated to repay the loans secured by each of the lots. (Compl. ¶¶ 12, 18, 22, 28).

{14}    A. Jacobson, Walsh, and Plaintiff (A. Jacobson's brother) discussed setting up an LLC with the three of them as members. (Defs.' Br. Supp. Mot. I 2). Plaintiff and A. Jacobson had previously been involved in several business ventures together, most of them ending in failure or contention. (Dep. S. Jacobson pp. 44–86, Nov. 16, 2010).

{15} Plaintiff alleges in his Complaint that A. Jacobson and Walsh represented to him that they would create an LLC with three members, including Plaintiff; that the LLC would own the lots; and that Plaintiff would own a one-third interest in the lots. (Compl. ¶¶ 36–37; Pl.'s Resp. Mot. I 3). Interestingly, Plaintiff's position regarding the ownership interest promised to him appears to shift. In his breach of contract claim, Plaintiff alleges that the parties "agreed to transfer the six Lots in Cannonsgate and Bull Point into the name of [Coastal] and to subsequently provide Plaintiff with a one-third interest in [Coastal]." (Compl. ¶ 136). However, in his fraudulent misrepresentation claim, Plaintiff alleges that Defendants told him "on several occasions that he would become a one-third (1/3) partner in the ownership of the lots in Cannonsgate and Bull Point and in the operation of [Coastal]." (Compl. ¶ 127).

{16} Defendants, on the other hand, assert that they were unwilling to transfer title to the LLC because Walsh and Jacobson were individually obligated for the costs of refinancing the lots; that Plaintiff was aware of this before making an investment in the company; and the parties agreed that Defendants would pledge any proceeds from the lots to the LLC. (Defs.' Br. Supp. Mot. I 3). In his deposition, Plaintiff admitted he knew the properties would not be transferred into the LLC's name before he invested any money. (Dep. S. Jacobson pp. 200–02, 205–06, 254).

{17} On June 24, 2007, Articles of Organization for Coastal were filed with the North Carolina Secretary of State (Compl. ¶ 44), designating the entity as a manager-managed LLC. The Articles identified A. Jacobson as the registered agent and his business office as the registered office for Coastal. (Pl.'s Resp. Mot I 4).

{18} A. Jacobson circulated a draft Operating Agreement to Walsh and Plaintiff that named A. Jacobson as the sole manager and listed A. Jacobson, Plaintiff and Walsh as members. (Compl. ¶¶ 49, 51, 53).

{19} Plaintiff contends he neither consented to nor signed the draft Operating Agreement. Nonetheless, in reliance upon the representations of Defendants, he "contributed a total of $210,322.64 to A. Jacobson and Walsh pursuant to the 'real estate' investment opportunity" they offered him. (Compl. ¶¶ 57, 82). Plaintiff

insists that "Walsh fraudulently misrepresented the facts of the financing on the lots . . . in an effort to induce him to continue funding the carrying costs on the lots." (Compl. ¶ 81). In his deposition, however, Plaintiff acknowledged that he was aware of the carrying costs before he made his investment in the venture (Dep. S. Jacobson pp. 112, 258), and admits that his only evidence of Defendants' statements being misrepresentations is his suspicion that Defendants knew the statements were false when they made them. (Dep. S. Jacobson pp. 99–100).

{20} Defendants contend that A. Jacobson presented the draft Operating Agreement to Plaintiff and, in A. Jacobson's presence, Plaintiff signed Exhibit B to the Operating Agreement, which was not the appropriate signature page; and that shortly thereafter in June 2007, Plaintiff wired approximately $150,000.00 to invest in Coastal. (Defs.' Br. Supp. Mot. I 2–3). In sworn deposition testimony, Plaintiff acknowledged it was possible he signed Exhibit B thinking he was executing the Operating Agreement, but did not think that was the case. (Dep. S. Jacobson pp. 190–92).

{21} Plaintiff never received an ownership interest in the lots and alleges that: (i) he was never consulted about any decision-making or the operation of Coastal; and (ii) Defendants unilaterally made decisions regarding the property, including modification of the loans, without his approval. (Compl. ¶¶ 64–67).

{22} Although Plaintiff now seeks an accounting and inspection of Coastal's corporate records, he admittedly has never requested any information from A. Jacobson regarding his investment. (Dep. S. Jacobson p. 204). Defendants counter that from the time Plaintiff made his initial investment of cash, he acted as though he was a member of Coastal until "the real estate bubble burst," when Plaintiff "abruptly decided that he was not, and had never been, a member of [Coastal]." (Defs.' Br. Supp. Mot. I 3). Defendants also assert that, thereafter, Plaintiff refused to contribute further to the costs and expenses of Coastal, "leaving Defendants to pay [his] share." (Defs. Br. Supp. Mot. I 3). It is uncontested that Plaintiff has made no capital contribution to Coastal since 2008. (Dep. S. Jacobson pp. 220–24).

{23} In response to Plaintiff's Complaint, Walsh filed counterclaims for sanctions under Rule 11 and for attorney's fees pursuant to N.C.G.S. § 6-21.5, based principally on Plaintiff's admission that he had never had any prior business dealings with Walsh, and his concession that there was no fiduciary relationship between the two of them. (Walsh Answer pp. 16–17; Dep. S. Jacobson pp. 105, 256–58).

## IV.

## LEGAL STANDARD

{24} "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting N.C. GEN. STAT. § 1A-1, Rule 56(c) (2013)). Here, the Court considers the facts in the light most favorable to Plaintiff. *See Ron Medlin Constr. v. Harris*, 364 N.C. 577, 580, 704 S.E.2d 486, 488 (2010).

## V.

## ANALYSIS

## A.

## INDIVIDUAL CLAIMS

## 1.

## BREACH OF FIDUCIARY DUTY

{25} A breach of fiduciary duty requires, at the very least, the existence of a fiduciary relationship owing from one party to the other. *Green v. Freeman*, 749 S.E.2d 262, 268 (N.C. 2013) (quoting *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). This relationship exists

> in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . [and] "extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other."

*Abitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (citation omitted). Such domination and influence is "an essential component of any fiduciary relationship." *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708 (citation omitted). "'The existence of a fiduciary relationship is a question of fact.'" *Curry v. Mitchell*, 202 N.C. App. 558, 562, 688 S.E.2d 825, 828 (2010) (citation omitted).

{26} Plaintiff's claim for breach of fiduciary duty is premised upon previous business ventures between Plaintiff and A. Jacobson. According to Plaintiff, he became involved in the subject of this litigation "as a result of [his] confidence in A. Jacobson based on past investment experiences" and that he, a person who did not "invest in real estate with regularity, placed confidence and trust in the [sic] A. Jacobson and Walsh, and relied on their expertise to direct him to a viable and lucrative investment." (Pl.'s Resp. Mot. I 12; Compl. ¶ 144).

{27} Plaintiff alleges a confidence and trust in A. Jacobson, but he does not direct the Court to specific facts of such in the record. While the record demonstrates a history of unrelated, failed and contentious business and investment ventures between Plaintiff and A. Jacobson before Plaintiff's involvement in Coastal (Dep. S. Jacobson pp. 44–86), Plaintiff points to no evidence of domination or control by A. Jacobson in past ventures, and nothing in the record leads the Court to conclude that A. Jacobson figuratively "held all the cards" in the Coastal transaction; nor does it appear that Plaintiff was left in the dark regarding the Coastal transaction.

{28} Plaintiff's Complaint also includes a claim for breach of fiduciary duty against Walsh. The parties now agree that Walsh did not owe Plaintiff a fiduciary duty. Accordingly, summary judgment is appropriate for Walsh on the breach of fiduciary duty claim.

{29} The Court concludes, therefore, that there is no genuine issue of material fact regarding Plaintiff's breach of fiduciary duty claim. Accordingly, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's individual breach of fiduciary duty claim as to all Defendants.

2.

## FRAUD AND FRAUDULENT MISREPRESENTATION

{30}    "While actual fraud has no all-embracing definition, . . . the following essential elements of actual fraud are well established: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974) (citations omitted).  Further, any reliance on the allegedly false representations must be reasonable. *See Johnson v. Owens*, 263 N.C. 754, 757, 140 S.E.2d 311, 313 (1965).  "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007) (citing *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 224–25, 513 S.E.2d 320, 327 (1999)).

{31}    Because Plaintiff's claim for fraud is similar to his claim for fraudulent misrepresentation, as a matter of convenience, the Court considers them together. Defendants' alleged misrepresentations include statements that the investment would "garner a nice return on [Plaintiff's] investment and would be a good way to make some cash," and that Plaintiff would "become a one-third (1/3) partner in the ownership of the lots in Cannonsgate and Bull Point and in the operation of [Coastal]." (Compl. ¶¶ 126–27).

{32}    Plaintiff admits in his deposition that his only reason for believing the statements that the investment would "garner a nice return," and would "be a good way to make some cash" were misrepresentations was his suspicion that Defendants knew they were false when they made them. (Dep. S. Jacobson pp. 98–100).  Plaintiff points to no particular evidence to support Defendants' actual knowledge that the statements were false.  Mere suspicion or conjecture is insufficient to overcome summary judgment. *See Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 224, 513 S.E.2d 320, 327 (1999) (citation omitted).

{33}  The Court now turns to the alleged statement that Defendants told Plaintiff he would become a one-third partner in the ownership of the lots and in the operation of the LLC.  (Compl. ¶¶ 112, 127).  To be actionable, Defendants must have made false statements with the intent to deceive Plaintiff, Plaintiff must have in fact been deceived, and his reliance upon the misrepresentations must have been reasonable.  There are limited ways by which Plaintiff could have become a one-third partner in interest:  (1) by transfer of title to the lots directly to Plaintiff, or (2) by transfer of title to Coastal, of which Plaintiff was a member.

{34}  Addressing first a transfer of a one-third interest in the lots directly to Plaintiff personally to induce his investment, when asked about his understanding at deposition, Plaintiff made it clear that, before investing in the deal, he understood the lots were not going to be transferred to him individually and that there was an issue with transferring the lots to Coastal.  (Dep. S. Jacobson p. 254).  Furthermore, Plaintiff points the Court to no evidence that Defendants ever told him he would receive a security interest in the lots, nor is there any evidence before the Court that any statement Defendants allegedly made directly to Plaintiff regarding a transfer of the lots deceived him in fact or caused him damage.

{35}  Second, Plaintiff admitted in his deposition testimony that before he invested any money in the venture, A. Jacobson made him aware that the lots were titled in the individual names of Defendants and their wives and that the properties would not be transferred into Coastal's name.  (Dep. S. Jacobson pp. 200–02, 254).  Plaintiff further admitted in his deposition that A. Jacobson never made any representations to him that were inconsistent with the ownership arrangement set out in the draft operating agreement.  (Dep. S. Jacobson p. 205).  Knowing this, Plaintiff nonetheless wired investment money to Defendants.  (Dep. S. Jacobson pp. 200–02).

{36}  In deposition testimony, Plaintiff also stated he did not know whether anyone told him he'd be given a voice in decision-making for Coastal.  (Dep. S. Jacobson p. 127).  To succeed on a claim for fraudulent misrepresentation on this basis, Plaintiff must first offer facts to support his contention that Defendants did

in fact tell him he would be given a voice in decision-making for Coastal.  Plaintiff has failed to do so.

{37}  By his own admissions, Plaintiff defeats this claim.  Therefore, the Court **GRANTS** Motion I.  Plaintiff's claims for fraud and fraudulent misrepresentation are **DISMISSED** with prejudice.

3.

### FRAUDULENT CONCEALMENT

{38}  "A claim for fraud may be based on . . . 'a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose.'" *Hardin v. KCS Int'l, Inc.,* 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (quoting *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986)).  In addition to the elements for fraud, a claim for fraudulent concealment requires that the Defendant have a duty to disclose material information to [Plaintiff], "as silence is fraudulent only when there is a duty to speak." *Lawrence v. UMLIC–Five Corp.,* 2007 NCBC 20 ¶ 34 (N.C. Super. Ct. June 18, 2007), http://www.ncbusinesscourt.net/opinions/ 2007_NCBC_ 20.pdf (granting motion to dismiss based on failure to satisfy the pleading requirements of Rule 9(b)) (citing *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976)).  A duty to speak may arise: (1) in the context of a fiduciary relationship, (2) where "a party has taken affirmative steps to conceal material facts from the other," or (3) "where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton*, 81 N.C. App. at 297–98, 344 S.E.2d at 119.

{39}  Plaintiff bases Defendants' duty to speak on an alleged fiduciary relationship.  Having concluded above that no such duty existed, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's fraudulent concealment claim.

4.

### BREACH OF CONTRACT

{40}  To establish a *prima facie* claim for breach of contract, a plaintiff must show: "(1) existence of a valid contract and (2) breach of the terms of that contract."

*Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). "A contract is 'an agreement, upon sufficient consideration, to do or not to do a particular thing.'" *N. & W. Overall Co. v. Holmes*, 186 N.C. 428, 431, 119 S.E. 817, 818 (1923) (citation omitted). An agreement requires the concurrence of at least two minds. The understanding of one party, alone, has no legal consequence. *Prince v. McRae*, 84 N.C. 674, 675 (1881).

{41} Defendants contend the only valid contract between themselves and Plaintiff was the written Operating Agreement that provided Plaintiff an interest in Coastal. (Defs.' Br. Supp. Mot. I 14; Defs.' Reply Br. Supp. Mot. I 8). They assert that Plaintiff signed the Operating Agreement, thereby binding himself, and that they complied with its terms. (Defs.' Br. Supp. Mot. I 14–15). In contrast, Plaintiff contends that the contract between himself and Defendants was the understanding that he would be provided some interest in the Lots in consideration for his monetary contribution. (Pl.'s Resp. Mot. I 13).

{42} Regarding the Operating Agreement, Plaintiff admits that it is a possibility he signed Exhibit B thinking he was executing the Operating Agreement, but contends he does not think that was the case and does not recall ever signing it. (Dep. S. Jacobson pp. 190–92). Plaintiff's position does not constitute an admission that he actually executed the Operating Agreement and reasonable minds might disagree about whether he did or did not sign it. However, as the Court understands Plaintiff's Complaint, the agreement he relies upon is not the Operating Agreement to which Defendants refer, but a separate understanding wherein Defendants agreed to transfer the six Lots in Cannonsgate and Bull Point into the name of Coastal, and to subsequently provide Plaintiff with a one-third interest in Coastal. (Compl ¶136). Defendants deny that they were party to any agreement other than the fully executed written Operating Agreement.

{43} Whether Plaintiff premises his claim upon the draft operating agreement to which he refers in the Complaint, upon a fully executed operating agreement as Defendants contend, or upon a verbal agreement with Defendants, resolution of this

issue would ordinarily require the Court to weigh evidence and determine credibility, which is inappropriate for summary judgment.

{44} But here, there is more. Although Plaintiff avers in the Complaint that Defendants breached the alleged contract by failing to put the properties in Coastal's name, in his Response in Opposition to Motion I, he states that

> [i]nitially, all parties believed that [Plaintiff] would be provided an ownership interest in the Lots, but due to financing issues, it was later learned that an alternate interest must be provided to [Plaintiff], such as a security interest in the Lots. Defendants never provided this security interest to the Plaintiff, and as a result, breached the terms of the parties' contract.

(Pl.'s Resp. Mot. I 13). The Court interprets this statement to mean that, from Plaintiff's perspective, the alleged operative contract between the parties was for Defendants to provide Plaintiff with a security interest in the lots, not an ownership interest. This position belies Plaintiff's breach of contract claim, made upon information and belief. Plaintiff defeats his breach of contract claim by this substantial contradiction regarding the contract and its breach.

{45} Plaintiff directs the Court to no facts or other evidence from which the Court could conclude that Defendants ever agreed to provide Plaintiff a security interest in the properties. The Court concludes, therefore, that there is no genuine issue of fact as to whether there existed a mutual understanding between the parties that the six lots would be transferred to Coastal or that Plaintiff would receive a security interest in them.

{46} Based on the foregoing, the Court **GRANTS** Motion I as to Plaintiff's individual claim for breach of contract, and **DISMISSES** the claim with prejudice.

5.

UNFAIR AND DECEPTIVE PRACTICES

{47} To prevail on a claim for unfair and deceptive practices under section 75-1.1 of the North Carolina General Statutes, a plaintiff must demonstrate the existence of three factors: "(1) an unfair and deceptive act or practice . . ., (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 9, 472

S.E.2d 358, 362 (1996) (citations omitted). In the Unfair and Deceptive Practices Act (the "Act"), the term "unfair" means "a practice which offends established public policy, and which can be characterized by one or more of the following terms: 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* "Commerce" includes "[t]he business of buying, developing and selling real estate." *Trantham v. Michael L. Martin, Inc.*, 745 S.E.2d 327, 334 (N.C. Ct. App. 2013) (citation omitted).

{48} The North Carolina General Assembly did not intend for the Act to apply to the internal conduct of a single business. *White v. Thompson*, 364 N.C. 47, 53, 691 S.E.2d 676, 680 (2010).

{49} While the Court's resolution of Plaintiff's fraud-related claims might arguably serve to defeat the unfair and deceptive practices claim, there is an additional hurdle that Plaintiff has failed to overcome.

{50} Plaintiff posits that the transaction was "in commerce" because Defendants "were in the business of buying and selling real estate, not residences." (Pl.'s Resp. Mot. I 9). Plaintiff relies on *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 567 S.E.2d 781 (2002), for the proposition that "[t]he business of buying, developing and selling real estate is an activity 'in or affecting commerce' for the purposes of N.C. Gen. Stat. § 75-1.1." (Pl.'s Resp. Mot. I 9). However, *Governor's Club* involved an actual agreement between the plaintiff and the defendants for the construction and sale of real estate, unlike the case at hand. *Id.* at 242, 567 S.E.2d at 783. Here, Defendants were not selling or leasing real estate to Plaintiff, but were, instead, jointly participating in a real estate venture.

{51} The facts of this case are more similar to those in *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 684 S.E.2d 41 (2009), than to those in *Governor's Club*. In *Carcano*, the parties were all involved in a joint venture to purchase and develop lots. 200 N.C. App. at 164, 684 S.E.2d at 45. The conflict concerned the defendants' failure to form the agreed-upon LLC. *Id.* at 165, 684 S.E.2d at 45–46. The plaintiffs alleged that the defendants had "'marketed membership in a fictional LLC' which involved 'deception, lies, and misrepresentations.'" *Id.* at 173, 684 S.E.2d at 50.

The North Carolina Court of Appeals held that "[a]ny 'marketing' of membership in order to raise capital for purchasing real estate was handled either directly between defendants and plaintiffs or involved . . . an intermediary and had no impact on consumers or the marketplace." *Id.* at 175, 684 S.E.2d at 52. Therefore, the "[p]laintiffs failed to show that defendants' actions had any effect on commerce." *Id.*

{52} Like the parties in *Carcano*, Plaintiff and Defendants were involved in a joint venture to invest in and develop real estate. All transactions at issue occurred between the parties and did not affect any consumers in the real estate marketplace. Accordingly, the Court concludes that the transaction was not "in or affecting commerce" as required by N.C.G.S. §75-1.1, a fatal deficit for Plaintiff.

{53} Therefore, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's unfair and deceptive practices claim.

6.

PUNITIVE DAMAGES

{54} "To prevail on a claim for punitive damages, Plaintiff[] must succeed on a claim for compensatory damages, and prove by clear and convincing evidence that one or more of the following aggravating factors were present: (a) fraud, (b) malice, or (c) willful or wanton conduct." *BOGNC, LLC v. Cornelius NC Self-Storage, LLC*, 2013 NCBC 26 ¶ 104 (N.C. Super. Ct. May 1, 2013), http://www.ncbusinesscourt.net/opinions/2013_NCBC_26.pdf (dismissing the plaintiffs' claim for punitive damages) (citation omitted).

{55} Defendants premise their entire argument for summary judgment as to Plaintiff's punitive damages claim on their belief that Plaintiff can support no underlying claim for relief. (Defs.' Br. Supp. Mot. I 17). Defendants are correct. None of Plaintiff's individual claims have survived summary judgment. Defendants are, therefore, entitled to the relief they seek as a matter of law.

{56} The Court **GRANTS** Motion I as to Plaintiff's punitive damages claim, and the same is hereby **DISMISSED** with prejudice.

7.

## DISSOLUTION

{57} The Court may dissolve an LLC upon request of a member

> if it is established that (i) the managers, directors, or any other persons in control of the [LLC] are deadlocked in the management of the affairs of the [LLC], the members are unable to break the deadlock, and irreparable injury to the [LLC] is threatened or being suffered, or the business and affairs of the [LLC] can no longer be conducted to the advantage of the members generally, because of the deadlock; (ii) liquidation is reasonably necessary for the protection of the rights or interests of the complaining member; (iii) the assets of the [LLC] are being misapplied or wasted; or (iv) the articles of organization or a written operating agreement entitles the complaining member to dissolution of the [LLC].

*Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer*, 209 N.C. App. 369, 390, 705 S.E.2d 757, 772 (quoting N.C. GEN. STAT. § 57C-6-02 (2013)).

{58} The parties disagree about the state of affairs at Coastal. Defendants claim that dissolution of Coastal would be inequitable and that it is in the best interest of both parties for the company to continue operating. (Defs.' Br. Supp. Mot. I 18). Plaintiff alleges that Coastal's assets are being mismanaged, as evidenced by the foreclosure of real estate valued in excess of $1,000,000.00 and the loss of about $750,000.00 of investments. (Pl.'s Resp. Mot. I 16).

{59} Other than his allegations, Plaintiff does not direct the Court to any specific acts of mismanagement, or to acts of Defendants' misapplication or waste of Coastal's assets; nor does Plaintiff otherwise specify evidence in support of his contention that dissolution is necessary to protect his interests. The mere fact of foreclosure and the loss of investments, standing alone, is insufficient evidence of mismanagement. In fact, such are not uncommon business occurrences in the absence of mismanagement.

{60} Plaintiff has made no capital contribution to Coastal since 2008 and does not claim that he will be required to do so in the future. (Dep. S. Jacobson pp. 220–24). Plaintiff has presented mere allegations of the loss he suffered, but has offered

no evidence of its cause.[1]  The Court perceives no genuine issue of material fact as to whether the assets of Coastal are being misapplied or wasted.

{61}  Therefore, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's individual dissolution claim.

B.

DERIVATIVE CLAIMS

{62}  N.C.G.S. § 57C-8-01(a) authorizes a member of an LLC to bring an action on behalf of the LLC if the plaintiff lacks the authority to cause the LLC to sue on its own behalf and

> [t]he plaintiff (i) is a member of the [LLC] at the time of bringing the action, and (ii) was a member of the [LLC] at the time of the transaction of which the plaintiff complains, or the plaintiff's status as a member of the [LLC] thereafter devolved upon the plaintiff pursuant to the terms of the operating agreement from a person who was a member at such time.

N.C. GEN. STAT. § 57C-8-01(a) (2013).

1.

BREACH OF FIDUCIARY DUTY

{63}  As a general rule, members of an LLC do not owe the LLC a fiduciary duty. *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009) (citation omitted).  However, "[t]he LLC Act imposes certain default duties upon the manager of [an LLC] to 'discharge his duties as manager in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances, and in the manner the manager reasonably believes to be in the best interests of the [LLC].'"  *BOGNC*, 2013 NCBC 26 at ¶ 52 (quoting N.C. GEN. STAT. § 57C-3-22(b) (2013)).

{64}  A. Jacobson is a member and the sole manager of Coastal.  (Aff. A. Jacobson ¶ 2).  As manager, the LLC Act imposed upon A. Jacobson the duty to act in good faith and to utilize ordinary care in discharging his managerial duties. Because Walsh owed no duty to the company as member or otherwise, summary

---

[1] Plaintiff is not foreclosed from availing himself of the statutory mechanism put in place for the cessation of LLC membership.  *See* N.C. GEN. STAT. § 57C-3-02 (2013).

judgment is appropriate as to Plaintiff's derivative breach of fiduciary duty claim against him.  Accordingly, the Court addresses Plaintiff's derivative breach of fiduciary duty claim solely as it applies to A. Jacobson.[2]

{65}   Plaintiff alleges that A. Jacobson breached his fiduciary duty to Coastal by (i) failing to disclose the carrying costs associated with maintaining the lots; (ii) allowing Coastal to invest in property with declining fair market value; and (iii) failing to aggressively market the lots for sale in order to satisfy the outstanding loans. (Compl. ¶¶ 160–62).  Plaintiff argues that he sought information about an exit strategy from Defendants on numerous occasions and Walsh told him "that they were limited with regard to the actions that could be taken because [those] actions could destroy their credit."  (Pl.'s Resp. Mot. I 17–18).  A. Jacobson contends that Plaintiff's allegations are based solely on conjecture and are not supported by the evidence.  (Defs.' Br. Supp. Mot. I 20).

{66}   In his deposition, Plaintiff admitted he knew of the carrying costs involved in the properties and he only suspected that A. Jacobson knew of the declining real estate market.  (Dep. S. Jacobson pp. 112, 258).  Regarding his allegation that A. Jacobson failed to aggressively market the lots for sale, Plaintiff presented evidence that he repeatedly offered suggestions about how to get rid of the lots but was met with responses ranging from "we need to weather this temporary storm," to "I say that we put all lots for sale at this point at the price we paid for them and see if we can get an offer." (Dep. S. Jacobson Ex. 14).  However, each of the statements in response to Plaintiff's suggestions was made by Walsh, not by A. Jacobson.  (Dep. S. Jacobson Ex. 14).  The Court has before it no evidence that A. Jacobson failed to aggressively market the lots for sale.  Moreover, Plaintiff has failed to offer any evidence, or point to particular facts, that A. Jacobson knew or should have known the property was declining in value when he allowed Coastal to invest in it.  At his deposition, Plaintiff confirms that he merely suspected A. Jacobson knew of the lots'

---

[2] The same is true for all Plaintiff's derivative claims that require a duty as an essential element. This includes Plaintiff's derivative claims for negligence and negligent misrepresentation discussed herein.

declining value when he offered Plaintiff the investment opportunity. (Dep. S. Jacobson p. 258).

{67} For the reasons given, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's derivative breach of fiduciary duty claim as to all Defendants.

2.

ACCOUNTING AND INSPECTION OF CORPORATE RECORDS

{68} A member of an LLC may make "reasonable demand" for "information regarding the status of the business and the financial condition of the [LLC]." The demand, however, must "(i) be in writing, (ii) be made in good faith and for a proper purpose, and (iii) describe with reasonable particularity the purpose and the record or information desired." N.C. GEN. STAT. § 57C-3-04 (2013).

{69} In his Complaint, Plaintiff requests a full accounting and an inspection of all Coastal corporate records (Compl. ¶¶ 166–67), and bases his request on allegations that "A. Jacobson and Walsh took actions clearly in conflict with the interests of [Coastal] and entered into transactions from which they derived an improper personal benefit." (Compl. ¶ 165). Defendants argue that the requested information has always been available to Plaintiff had he demanded it. (Defs.' Br. Supp. Mot. I 20–21). Plaintiff does not argue or contend that he made a written demand upon Defendants for information, rather that such a request would have been futile because "[t]he manager of [Coastal] and the only member other than [himself] were the parties against whom [he] intended to proceed with legal action." (Pl.'s Resp. Mot. I 18). Furthermore, in his deposition, Plaintiff stated that he "didn't feel [he] needed to make an affirmative request for information to get information on [his investment]." (Dep. S. Jacobson p. 204).

{70} Having failed to meet the prerequisite of a proper request to inspect Coastal's records and for an accounting, Plaintiff is not entitled to the relief sought.

{71} Therefore, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's claim for full accounting and inspection of corporate records.

3.

## NEGLIGENCE

{72}  "'The essential elements of any negligence claim are the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff.'" *Harris v. DaimlerChrysler Corp.*, 180 N.C. App. 551, 555, 638 S.E.2d 260, 265 (2006) (quoting *Peace River Elec. Coop. v. Ward Transformer Co.*, 116 N.C. App. 493, 511, 449 S.E.2d 202, 214 (1994)).

{73}  As manager of Coastal, A. Jacobson is the only member who owed an obligation to the company. *See BOGNC*, 2009 NCBC 26 at ¶ 52.

{74}  Plaintiff alleges that, as manager, A. Jacobson was negligent in that he:

(a) [f]ailed to draft the necessary corporate documents to effectively establish [Coastal];

(b) [f]ailed to provide the members of [Coastal] with the necessary reporting forms for tax purposes;

(c) [f]ailed to hold annual meetings of [Coastal];

(d) [f]ailed to file annual reports for [Coastal] with the North Carolina Secretary of State;

(e) [a]llowed the North Carolina Secretary of State to begin administratively dissolving [Coastal];

(f) [m]ade decisions about marketing the lots that were to the detriment of [Coastal];

(g) [f]ailed to exercise reasonable care in the selection and hiring . . . of realtors to sell the lots; and

(h) [was] otherwise careless and negligent in breaching legal duties owed to the members of [Coastal].

(Compl. ¶ 172).

{75}  In partial support of his claim, Plaintiff relies on his contention that Defendants did not file an annual report for the year 2011. (Pl.'s Resp. Mot. I 19). The Complaint was filed in 2010. Although in his response to Motion I Plaintiff claims that Defendants failed to file an annual report in 2011, because this event necessarily occurred after 2010, it could not have been contemplated in the Complaint. No North Carolina Court has, to date, recognized the relation-back of

allegations of fact without amending the complaint.  *See Gadsden v. George H. Crafts & Co.*, 175 N.C. 358, 361, 95 S.E. 610, 611 (1918) ("In suits founded on negligence, allegations of fact tending to establish the same general acts of negligence may properly be added by amendment.") (citation omitted).  Plaintiff has not sought to amend his Complaint.  Consequently, Plaintiff's allegation that Defendants failed to file an annual report for the year 2011 cannot serve as evidence to support his contention.

{76}　Further, Plaintiff rests his negligence claim on mere allegation and suspicion, neither of which are sufficient to overcome a motion for summary judgment.  In addition, Plaintiff has not demonstrated any injury to Coastal proximately caused by one or more of the alleged failings attributed to A. Jacobson as manager of Coastal; nor has plaintiff offered or forecasted evidence of a breach of duty, an essential element of his negligence claim.

{77}　Therefore, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's derivative negligence claim as to all Defendants.

4.

NEGLIGENT MISREPRESENTATION

{78}　"To establish a claim for negligent misrepresentation, a party must show that he: '[(1)] justifiably relies [(2)] to his detriment [(3)] on information prepared without reasonable care [(4)] by one who owed the relying party a duty of care.'"  *Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 700, 671 S.E.2d 7, 12 (2009) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *rev'd on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991)) (alteration in original).  Unlike fraudulent misrepresentation, Plaintiff must prove that A. Jacobson should have known the statements he made were false.  *See Whitehurst v. Life Ins. Co.*, 149 N.C. 273, 278, 62 S.E. 1067, 1068 (1908) ("A misrepresentation, however, is a fraud at law, although made innocently, and with an honest belief in its truth, if it be made by a man who ought in the due discharge of his duty to have known the truth, or who formerly knew, and ought to have remembered, the fact which negatives the representation . . . .").

{79}  Plaintiff identifies no evidence of any misrepresentation relied on by Coastal to its detriment.  The purpose of a derivative action is to enforce the rights of the LLC, not those of its individual members.  *See* N.C. GEN. STAT. § 57C-8-01 ("A member may bring an action in the superior court of this State in the right of any . . . [LLC] to recover a judgment in its favor . . . .").  Plaintiff directs the Court to no evidence in support of his derivative claim for negligent misrepresentation.[3]

{80}  Therefore, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's derivative negligent misrepresentation claim as to all Defendants.

5.

FRAUD AND FRAUDULENT MISREPRESENTATION

{81}  "To survive a motion for summary judgment on the charge of fraud, the record must show evidence of the following: '(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party.'"  *Hospira*, 194 N.C. App. at 699, 671 S.E.2d at 11 (citation omitted).

{82}  Similar to Plaintiff's derivative negligent misrepresentation claim, Plaintiff provides no evidence of any misrepresentation made to or relied upon by Coastal, the party in interest in the derivative fraud and fraudulent misrepresentation claims.  Plaintiff argues only that A. Jacobson's representations deceived members of Coastal into personally investing in Defendants' real estate project, not that Coastal, itself, was deceived into investing in the project.  (Compl. ¶ 184).  Accordingly, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's derivative fraud and fraudulent misrepresentation claims.

---

[3] It is unnecessary to consider the nature of A. Jacobson's statements or whether A. Jacobson should have known of their falsity because Plaintiff has neither alleged nor provided evidence of any information provided to Coastal that it could have relied on.  Plaintiff's derivative claim is based entirely on alleged wrongs committed against him, which have already been addressed in Plaintiff's individual claims.

6.

## DISSOLUTION AND FRUSTRATION OF MEMBER EXPECTATIONS

{83}    Plaintiff and Defendants summarily repeat their arguments for and against dissolution of Coastal that are discussed in Plaintiff's individual dissolution claim.  Therefore, the Court **GRANTS** Motion I and **DISMISSES** Plaintiff's dissolution and frustration of member expectations claim.

7.

## VERIFICATION

{84}    All complaints initiating shareholder derivative actions must be verified. N.C. GEN. STAT. § 1A-1, Rule 23(b) (2013); *Blythe v. Bell*, 2013 NCBC 7 ¶ 45 (N.C. Super. Ct. Feb. 4, 2013), http://www.ncbusinesscourt.net/opinions/ 2013_NCBC_7.pdf (denying the defendants' motions for summary judgment in part).  Because the Court has dismissed all of Plaintiff's remaining claims, it is unnecessary to address this claim.

VI.

## RULE 11 SANCTIONS

{85}    "Rule 11 requires that pleadings, motions, and other papers filed with the court . . . be well-grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not filed for any improper purpose, such as to harass or cause unnecessary delay or increase in the costs of litigation." *McKinnon v. CV Indus.*, 2012 NCBC 36 ¶ 36 (N.C. Super. Ct. June 11, 2012), http://www.ncbusinesscourt.net/opinions/2012_NCBC_36.pdf (granting in part and denying in part the defendant's motion for attorney's fees under Rule 11 and N.C.G.S. § 6-21.5), *remanded in part*, 745 S.E.2d 343 (N.C. Ct. App. 2013).  The Rule 11 analysis considers three requirements: "(1) factual sufficiency, (2) legal sufficiency, and (3) proper purpose." *Static Control Components, Inc. v. Vogler*, 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002) (citation omitted).  A failure to meet any one of these requirements obligates the Court to impose sanctions.  *Id.*

{86}  "Analysis of the factual sufficiency of a complaint requires the court to determine '(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact.'" *Id.* at 603–04, 568 S.E.2d at 308 (citation omitted).  "An inquiry is reasonable if 'given the knowledge and information which can be imputed to a party, a reasonable person under the same or similar circumstances would have terminated his or her inquiry and formed the belief that the claim was warranted under existing law.'" *Id.* at 604, 568 S.E.2d at 308 (citation omitted).

{87}  "[I]n determining whether a pleading was warranted by existing law at the time it was signed the court must look at the face of the pleading and must not read it in conjunction with responsive pleadings . . . ." *Bryson v. Sullivan*, 330 N.C. 644, 656–57, 412 S.E.2d 327, 333 (1992).  A threshold determination for the Court is whether the pleading is "facially plausible."

> If the pleading is not facially plausible, . . . the [C]ourt must ask whether the pleading party failed to "conduct reasonable inquiry into the law or did not reasonably believe that the [pleading] was warranted by existing law" or "a good faith argument for the extension, modification, or reversal of existing law."

*McKinnon*, 2012 NCBC 36 ¶ at 39 (citations omitted).

{88}  Applying an objective standard, the Court's analysis should take into account whether the pleading, motion, or other paper was filed for "'any purpose other than one to vindicate rights . . . or to put claims of right to a proper test.'" *Brown v. Hurley*, 124 N.C. App. 377, 382, 477 S.E.2d 234, 238 (1996) (quoting *Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992)).  Upon completion of the analysis, the non-moving party "'will be held responsible if his evident purpose is to harass, persecute, otherwise vex his opponents or cause them unnecessary cost or delay.'" *Id.* (citation omitted).

{89}  Here, Walsh premises his motion for Rule 11 sanctions on his belief that Plaintiff continued with litigation even though "many, if not all, of his allegations were baseless."  (Defs.' Reply Br. Supp. Mot. I 11).  Walsh also claims that "Plaintiff

has continued his lawsuit for more than a year after admitting in his deposition that it is without basis in fact." (Defs.' Br. Supp. Mot. I 25).

{90}   Plaintiff has never admitted that his lawsuit was "without basis in fact" as Walsh suggests.  The only claims Plaintiff admits are without bases in fact are his individual claims against Walsh for breach of fiduciary duty and fraudulent concealment. (Dep. S. Jacobson pp. 105, 256–58).

{91}   Walsh has presented no evidence tending to prove that Plaintiff's entire lawsuit was not warranted by existing law at the time the pleading was filed, nor does he direct the Court to specific facts or evidence that the lawsuit was filed for an improper purpose.  As the movant, Walsh bears the burden of proving that Plaintiff has violated Rule 11 in a manner that entitles him to sanctions from the Court.  The Court concludes that Walsh has carried his burden only with respect to Plaintiff's individual claims for breach of fiduciary duty and fraudulent concealment. However, because the Court grants relief under N.C.G.S. § 6-21.5, the Court need not impose sanctions under Rule 11.  *See Overcash v. Blue Cross & Blue Shield*, 94 N.C. App. 602, 618, 381 S.E.2d 330, 340 (1989) (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986)).

{92}   Therefore, the Court **DENIES** Motion II.

VII.

VIOLATION OF N.C.G.S. § 6-21.5

{93}   "N.C.G.S. § 6-21.5 allows a court, upon motion of the prevailing party, to award [attorney's] fees if the court finds that there was a 'complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.'" *McKinnon*, 2012 NCBC 36 at ¶ 42.  The purpose of N.C.G.S. § 6-21.5 is to prevent frivolous lawsuits.  *Persis Nova Constr. v. Edwards*, 195 N.C. App. 55, 66, 671 S.E.2d 23, 30 (2009).  A grant of summary judgment, standing alone, is not sufficient to support an award of attorney's fees under N.C.G.S. § 6-21.5. *McKinnon*, 2012 NCBC 36 at ¶ 42.  Because the statute detracts from the common law, it must be strictly construed.  *Persis Nova Constr.*, 195 N.C. App. at 65, 671 S.E.2d at 29 (citation omitted).

{94} In a claim for attorney's fees under N.C.G.S. § 6-21.5, "the first issue is whether the pleading, when read in conjunction with all the responsive pleadings, facially presents a justiciable issue of law." *Depasquale v. O'Rahilly*, 102 N.C. App. 240, 246–47, 401 S.E.2d 827, 831 (1991) (citing *Bryson*, 102 N.C. App. at 16, 401 S.E.2d at 656). "If not, then the second issue is 'whether the losing party should reasonably have been aware that the pleading he filed contained no justiciable' issue of law." *Id.* The Court must determine whether "the losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." *Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 258, 400 S.E.2d 435, 438 (1991).

{95} Walsh bases his motion for attorney's fees on Plaintiff's failure to dismiss his breach of fiduciary duty claims against Walsh after Plaintiff stated in his deposition that the two had never had a previous business relationship. (Defs.' Br. Supp. Mot. I 25–26). In his deposition, Plaintiff admits that he had no prior association with Walsh and that he alleged a prior association with him as "an oversight." (Dep. S. Jacobson p. 105). Plaintiff even admits that there was no fiduciary relationship between him and Walsh. (Dep. S. Jacobson pp. 256–58). Plaintiff's oversight caused Walsh to incur the costs and inconvenience of defending against two claims that wholly lacked a justiciable issue of law or fact. Plaintiff has yet to dismiss his individual claims of breach of fiduciary duty and fraudulent concealment against Walsh.[4] The Court concludes that there was a complete absence of a justiciable issue of law or fact as to the individual claims of breach of fiduciary duty and fraudulent concealment raised against Walsh in the Complaint.

{96} Although Walsh seeks attorney's fees regarding all of Plaintiff's claims, he is not entitled to such relief.

{97} Therefore, the Court **GRANTS** Motion III, but only as to Plaintiff's individual claims of breach of fiduciary duty and fraudulent concealment. Walsh

---

[4] Although Plaintiff also filed a derivative breach of fiduciary duty claim against Walsh, Plaintiff's deposition statements that Walsh relies on in his argument were all made in reference to Plaintiff's individual claims against Walsh involving a fiduciary relationship. (*See* Defs.' Br. Supp. Mot. I 25–26; *see also* Dep. S. Jacobson pp. 105, 256–58).

may submit to the Court an accounting of attorney's fees reasonably incurred in defending against Plaintiff's individual breach of fiduciary duty and fraudulent concealment claims. The Court will conduct a hearing on the matter and afford Plaintiff an opportunity to be heard before setting an appropriate amount of attorney's fees to be assessed against him.

## VIII.
## CONCLUSION

{98} The Court **GRANTS** Motion I, **DENIES** Motion II, and **GRANTS** in part and **DENIES** in part Motion III.

{99} **WHEREFORE**, the Court hereby **DISMISSES** Plaintiff's (i) individual claims for fraud, fraudulent misrepresentation, fraudulent concealment, unfair and deceptive practices, breach of contract, breach of fiduciary duty, punitive damages, and dissolution; and (ii) derivative claims for breach of fiduciary duty, accounting and inspection of corporate records, negligence, negligent misrepresentation, fraud, fraudulent misrepresentation, and dissolution and frustration of member purpose.

{100} The Court does not address Motion I with respect to its verification claim, as such is superfluous.

{101} Having been determined in Motion II, the Court **DISMISSES** Walsh's counterclaims for sanctions pursuant to Rule 11, and **GRANTS** in part as Motion III the counterclaim/motion for sanctions for violation of N.C.G.S. § 6-21.5.

{102} Within 45 days from entry of this Order, Walsh shall submit to the Court an accounting of attorney's fees reasonably incurred by him in defending against Plaintiff's individual breach of fiduciary duty and fraudulent concealment claims.

**SO ORDERED**, this the 22nd day of January, 2014.