An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1273
NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014


WELLS FARGO BANK, N.A.,
        Plaintiff,

        v.                          Mecklenburg County
                                    No. 12 CVS 12252
KEVIN SCOTT FISCHER,
        Defendant.


Appeal by Defendant from order entered 22 July 2013 by Judge Robert T. Sumner in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 May 2014.


> *Parker Poe Adams & Bernstein LLP, by William L. Esser IV and Katie M. Iams, for Plaintiff.*

> *Ellis & Parker PLLC, by L. Neal Ellis, Jr., and Nathaniel Parker, for Defendant.*


STEPHENS, Judge.


*Procedural and Factual Background*

This appeal arises from an attempt by Plaintiff Wells Fargo Bank, N.A., to collect damages and attorney's fees from Defendant Kevin Scott Fischer as a result of his default on two promissory notes executed in 2008. In 2006, Fischer signed

purchase agreements on two lots, numbers 77 and 78, in a development known as "Grandfather Vistas."[1] The purchase of the lots was part of a large investment scheme which has resulted in other lawsuits and appeals to this Court. In greatly simplified form, the scheme involved the sale of certain lots by the Grandfather Vistas developers to investment purchasers for $500,000 each. Under the scheme, the developers promised to repurchase the lots from the investment purchasers after twelve months for $625,000 apiece and also promised to cover all interest payments on the loans. Thus, in effect, they offered the investment purchasers a guaranteed return of $125,000 in twelve months on each lot purchased. The developers arranged for Wells Fargo and two other banks to be "preferred lenders" in the sale of the lots. The other two lenders used an appraiser named A. Greg Anderson exclusively for appraisals as part of their underwriting process. Wells Fargo employed several appraisers to value properties in Grandfather Vistas, including Kyle Knight, who appraised Fischer's lots. Every lot, regardless of the appraiser used, was appraised at $500,000, the

---

[1] The record suggests that Fischer purchased additional lots using loans from another lender. Those loans are not part of this action.

exact minimum value required to support the 90% loan-to-value loans the developers had arranged with the preferred lenders as part of the investment scheme.[2] The money raised by the sales was supposed to finance the development of Grandfather Vistas, such that the developers would end up with a development of residential lots ready for sale after their repurchase from the investment purchasers. However, the money raised by the sales was not put back into the development, the developers never repurchased the lots, and, by 2007, Grandfather Vistas collapsed, leaving the investment purchasers with large loan obligations and lots worth only a fraction of their appraised values. Several of the developers later faced criminal charges in connection with the investment scheme.

Fischer's two loans from Wells Fargo were evidenced by two promissory notes dated 27 September 2006, each in the original principal amount of $455,717. Each required Fischer to make monthly interest payments for 25 months and to repay the entire amount of the principal and accrued interest by 27 September 2008. Following the collapse of Grandfather Vistas, Fischer asked Wells Fargo to refinance both of his loans, which Wells

---

[2] The loans were originally made by Wachovia Bank, N.A. Wells Fargo is the successor by merger to Wachovia Bank, N.A.

Fargo agreed to do. On 15 October 2008, Fischer executed and delivered to Wells Fargo two promissory notes, each in the original principal amount of $458,621.57. Under each of the 2008 notes, Fischer was required to make monthly payments for 35 months and to repay the entire amount of the original principal and accrued interest by 15 October 2011. Fischer defaulted on both 2008 notes.

In December 2008, Fischer and other investment purchasers initiated a lawsuit against, *inter alia*, the developers, Wells Fargo, other lenders involved in the scheme, and Anderson ("the Fazzari case").[3] The Fazzari plaintiffs brought claims of, *inter alia*, negligence, negligent misrepresentation, conversion, and civil conspiracy against Wells Fargo, alleging that the bank had conspired with the other defendants to sell overvalued lots based on inflated appraisals and had engaged in wrongful conduct in making the loans used to purchase Grandfather Vistas lots. Fischer sought damages and rescission of the 2008 notes.

In the Fazzari case, on 15 July 2011, Anderson moved for summary judgment on all remaining claims[4] against him, asserting

---

[3] None of the Wells Fargo appraisers were named as defendants in the Fazzari case.

[4] The record in the Fazzari case suggests that some of the

*inter alia*, that the Fazzari plaintiffs could not show reliance on any of his alleged misrepresentations. On the same date, the lenders filed motions for summary judgment as to all remaining claims against them, on their counterclaims against the Fazzari plaintiffs, and for attorneys' fees. On 16 February 2012, the court entered summary judgment in favor of Anderson on all claims against him. By order entered 8 March 2012, the court dismissed all remaining claims against Wells Fargo and the other lender defendants in the Fazzari case.

On 25 June 2012, Wells Fargo initiated this action against Fischer by filing a complaint alleging Fischer had defaulted on the 2008 notes. On 8 October 2012, Fischer filed an answer and motion to dismiss, asserting that Wells Fargo had failed to state a claim upon which relief could be granted because the issue of any monies owed under the 2008 notes was not ripe while the Fazzari appeal was pending. On 19 June 2013, Wells Fargo moved for summary judgment, supporting that motion with Fischer's responses to its requests for admissions, the affidavit of a bank employee, and portions of Fischer's

---

original Fazzari plaintiffs settled or withdrew their claims, or otherwise dropped out of that case before the lenders and appraiser filed their motions for summary judgment.

deposition from the Fazzari case.  In response, Fischer argued that resolution of the summary judgment motion should be postponed and supported this request with (1) an amended joint motion for continuance filed by the parties on 28 March 2013, which sought to continue the trial date in the matter in light of the complexity of the underlying factual circumstances; and (2) a copy of the 10 July 2013 default judgment order entered against the developer defendants in the Fazzari case.  Following a hearing, on 22 July 2013 the trial court entered an order granting summary judgment in favor of Wells Fargo.  Fischer appeals.

*Discussion*

Fischer argues that the trial court erred in entering summary judgment for Wells Fargo and granting a money judgment against Fischer.  We disagree.

> It is well settled that summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. . . .  The record is considered in the light most favorable to the party opposing the motion.

*Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 219-20, 513 S.E.2d 320, 324 (1999) (citation, internal

quotation marks, and emphasis omitted). "The movant has the burden of establishing the lack of any triable issue of fact." *Rankin v. Food Lion*, 210 N.C. App. 213, 215, 706 S.E.2d 310, 312 (2011) (citation and internal quotation marks omitted). However, "[o]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Id.* at 217, 706 S.E.2d at 313 (citation and internal quotation marks omitted; italics added). "[A]ffidavits or other material offered which set forth facts which would not be admissible in evidence should not be considered when passing on the motion for summary judgment." *Id.* at 218, 706 S.E.2d at 314 (citation and internal quotation marks omitted). Further, "the trial court may not consider an unverified pleading when ruling on a motion for summary judgment." *Id.* at 220, 706 S.E.2d at 315-16 (citation and internal quotation marks omitted).

Here, Fischer admitted executing the 2008 notes which required full repayment no later than October 2011 and defaulting on those obligations such that their unpaid balance is in the amount alleged by Wells Fargo. In his answer, Fischer

alleged three affirmative defenses: (1) that Wells Fargo breached the implied duty of good faith and fair dealing in making the loans; (2) estoppel, unclean hands, and laches; and (3) the risk of inconsistent verdicts in light of the Fazzari case. However, Fischer failed to present any affidavits or other sworn evidence in support of these defenses.[5] Having admitted defaulting on the 2008 notes and failing to forecast evidence in support of even a *prima facie* case for his alleged affirmative defenses, Fischer simply did not meet his burden on summary judgment. *See id.* at 217, 706 S.E.2d at 313.

Further, we note that, even had Fischer presented sworn evidence in support of his affirmative defenses, he would not prevail on the merits of those defenses in light of our decision in the Fazzari case. "[I]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the

---

[5] Fischer notes that he did submit a document entitled "Exhibit A Detailed Statement of Facts Supporting Defenses/Counterclaims asserted by Fischer (including references to documents and deposition transcripts from the Fazzari Litigation)." However, this document is both unsworn and, more importantly, merely a summary of excerpts from evidence in the Fazzari case. Accordingly, the document was not evidence to be considered by the trial court in ruling on the summary judgment motion.

correct reason for the judgment entered." *Rankin*, 210 N.C. App. at 215, 706 S.E.2d at 313 (citation, internal quotation marks, and brackets omitted). We have considered and rejected Fischer's arguments in the Fazzari case, filed contemporaneously with this opinion. *See Fazarri v. Infinity Partners, LLC*, __ N.C. App. __, __ S.E.2d __ (2014). For the reasons discussed in that opinion, summary judgment for Wells Fargo was proper in this action to collect on the 2008 notes, even had Fischer adequately supported his alleged affirmative defenses. *See Rankin*, 210 N.C. App. at 215, 706 S.E.2d at 313 ("If the correct result has been reached, the judgment will not be disturbed . . . ."). Accordingly, the trial court's order granting Wells Fargo's motion for summary judgment is

AFFIRMED.

Judges STROUD and MCCULLOUGH concur.

Report per Rule 30(e).