IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-72

Filed 6 August 2025

Onslow County, No. 23CVS001910-660

JOSEPH EBERHARDT and JORDYN EBERHARDT, Plaintiffs,

v.

JESICA MELETICH, RHONDA REID, EMILY ALBERTSON, ANCHOR REAL ESTATE OF EASTERN NORTH CAROLINA, INC., and HARRISON DORN INNOVATIVE PROPERTY SPECIALISTS, INC., Defendants.

Appeal by plaintiffs from order entered 16 July 2024 by Judge Ricardo Jensen in Onslow County Superior Court. Heard in the Court of Appeals 11 June 2025.

*Agosta Law, PLLC, by Vincent J. Agosta, for Plaintiffs-Appellants.*

*Manning, Fulton & Skinner, P.A., by William C. Smith, Jr., and Lawrence D. Graham, Jr., for Defendants-Appellees Rhonda Reid and Harrison Dorn Innovative Property Specialists, Inc.*

COLLINS, Judge.

This appeal arises out of the sale of a home. Plaintiffs Joseph and Jordyn Eberhardt appeal from the trial court's order granting Defendants Rhonda Reid and Harrison Dorn Innovative Property Specialists, Inc.'s motion for summary judgment. Plaintiffs argue that the trial court erred because Defendants made material omissions that influenced Plaintiffs' decision to purchase the home. For the following reasons, we affirm the trial court's order.

## I.    Background

Plaintiffs commenced this action on 11 July 2023 by filing a complaint against Defendants and several other parties.  In their complaint, Plaintiffs brought the following claims against Defendants: negligence, negligent misrepresentation, fraud, fraud in the inducement, and fraud in the concealment.  Defendants filed a motion for summary judgment on 10 June 2024.  The record evidence, which includes pleadings, affidavits, depositions, answers to interrogatories, and other documentary evidence, tends to show the following:

Jesica Meletich was the owner of a home located in Jacksonville, North Carolina, from approximately July 2008 through October 2022.  Meletich hired Reid, a licensed real estate broker working for Harrison Dorn, to assist Meletich in selling the home.

Reid saw the home for the first time on 15 May 2022.  During this walk-through, Reid noticed "a soft spot in front of the front door."  Reid told Meletich that the spot would have to be fixed and recommended that Meletich "call a flooring company."  Reid stated that although sellers' agents "can't require sellers to perform inspections, [Reid] strongly recommended [Meletich] have the structure evaluated due to the soft spot in front of the door."  Meletich told Reid that she would have her boyfriend inspect and repair the floor, stating that he "worked for a builder" and had "done that before."

Several months later, Meletich told Reid that various renovations had been

performed on the home, including repairing the subfloor damage that had caused the soft spot on the floor. Reid visited the home and noted that the spot in the floor "was no longer soft" and "was no longer giving way with [her] weight." At no point during the process of listing the home for sale did Reid ever see mold in the home, nor was she ever told by Meletich of any mold, water intrusion, defects, damage, or issues with the home that had not been repaired. On or about 9 September 2022, Reid posted online a listing for the home, which included a general description of the home and several photographs of both the interior and exterior of the home.

Plaintiffs, who were relocating to North Carolina from California, had contracted with Emily Albertson of Anchor Real Estate of Eastern North Carolina, Inc. to serve as their agent for the purchase of a house in North Carolina. Upon seeing the listing for Meletich's home, Albertson visited the home on Plaintiffs' behalf, as they were still living in California. Without having visited the home in person, Plaintiffs submitted a purchase offer. On or about 22 September 2022, Plaintiffs and Meletich executed a purchase agreement for the home.

A home inspection was conducted on Plaintiff's behalf on 30 September 2022. The inspection report revealed "[s]light sloping of the floor" likely due to a "past/present moisture intrusion condition where the subfloor absorbed and swelled from its original state." The inspection report recommended that Plaintiffs hire a qualified specialist to evaluate the crawlspace, areas with possible prior moisture stains, and sloped floors. The inspection report did not indicate the presence of mold

in the home.

Plaintiffs and Meletich closed on the sale of the home on 21 October 2022. Plaintiffs visited the home in person for the first time the morning of the closing, at which time they did not discover anything that warranted delaying the sale. Approximately three days after closing, Plaintiffs discovered mold inside the home. Upon further investigation, Plaintiffs discovered mold under the kitchen floor, behind kitchen cabinets, inside the kitchen walls, under the bathroom floor, inside the primary bedroom closet, and under the laundry room floor.

In her affidavit, Meletich stated that she did not have any actual knowledge of the presence of mold in the home at any point during the time which she owned it, and therefore, she did not disclose the existence of mold to Defendants when she hired them as her agents. She also stated that she did not receive any notice from those conducting renovations on the home about a discovery or suspicion of mold.

Defendants submitted the affidavit of Christina Asbury, a licensed real estate broker with approximately twenty years of experience as a licensed real estate agent in North Carolina. In her affidavit, Asbury stated,

> 10. I have reviewed the facts of this case, including the complaint and answer, applicable documents, and the deposition of Rhonda Reid, and I do not believe Rhonda Reid or her agency Harrison Dorn Innovative Property Specialists, Inc. has breached any duty owed to [Plaintiffs] in their service as listing/sellers agents in the transaction at issue.
>
> 11. Specifically, there is no duty by [Reid] to disclose to a

> buyer repairs successfully completed on the property she
> listed. In this case, she would have no duty to disclose that
> a soft spot in the floor had been repaired by replacing a
> plywood sheet or sheets in the mobile home. In fact, [Reid]
> has a fiduciary duty to her seller not to discourage potential
> buyers. Such a repair would not signify an increased
> likelihood of persisting water intrusion or mold.

(emphasis omitted).

On 16 July 2024, the trial court entered written orders granting Defendants' motion for summary judgment.[1] Plaintiffs appeal.

## II. Discussion

### A. Jurisdiction

We first address our jurisdiction to hear this appeal.

In civil actions, a party generally must file a notice of appeal with the clerk of superior court and serve copies thereof upon all other parties within thirty days after entry of the judgment. N.C. R. App. P. 3. A writ of certiorari, however, "may be issued in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action . . . ." N.C. R. App. P. 21(a)(1).

"[A] showing that the right of appeal has been lost through no fault of the petitioner [is] generally sufficient to support the issuance of a writ of certiorari." *In*

---

[1] Plaintiffs voluntarily dismissed with prejudice their claims against Albertson and Anchor Real Estate on 2 January 2024. Plaintiffs voluntarily dismissed with prejudice their claims against Meletich on 16 September 2024.

*re Z.T.W.*, 238 N.C. App. 365, 368 (2014) (cleaned up). Moreover, this Court may issue a writ of certiorari for an untimely filing of a notice of appeal when there was a clear intent to appeal on behalf of the petitioner. *See, e.g., State v. Loftis*, 264 N.C. App. 652, 655 (2019) ("Because [Petitioner's] actions indicate[d] an unmistakable intent to appeal [w]hat was lost solely because of the failure to timely act, we exercise our discretion and allow the petition for a writ of certiorari.") (citation omitted).

Here, the order granting Defendants' motion for summary judgment was reduced to writing on 10 July 2024 and filed on 16 July 2024. Plaintiffs delivered their notice of appeal to the US Postal Service on 9 August 2024 to be sent to and filed with the Onslow County clerk. The Postal Service, however, sent the notice of appeal to the wrong address. Upon realizing this, Plaintiffs sent another notice of appeal that was time stamped and filed on 16 August 2024, thirty-one days after entry of the summary judgment order. Plaintiffs' original notice of appeal was not filed until 20 August 2024.

The Postal Service has since confirmed that the given address on Plaintiffs' original notice of appeal was correct, and "the incorrect delivery was solely and exclusively the fault of the United States Postal Service." Additionally, copies of Plaintiffs' notice of appeal were delivered to the opposing parties on 9 August 2024, sufficiently providing them with notice of Plaintiffs' clear intent to appeal. Accordingly, as the untimely nature of Plaintiffs' appeal occurred through no fault of their own, and Plaintiffs demonstrated a clear intent to appeal the trial court's order,

we grant Plaintiffs' petition and proceed to the merits of their appeal.

**B. Analysis**

Plaintiffs argue that the trial court erred by granting Defendants' motion for summary judgment on Plaintiffs' claims for negligent misrepresentation and fraud[2] "because there are disputed material facts."

Summary judgment shall be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023). An issue is genuine if "it is supported by substantial evidence," and an issue is material if "the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681 (2002) (citations omitted).

"In evaluating the appropriateness of a trial court's decision to grant or deny a summary judgment motion in a particular case, we view the pleadings and all other evidence in the record in the light most favorable to the nonmovant and draw all

---

[2] Although the original complaint alleged various causes of action against Defendants including negligence, negligent misrepresentation, fraud, fraud in the inducement, and fraud in the concealment, Plaintiffs did not brief the negligence, fraud in the inducement, and fraud in the concealment claims before this Court and thereby abandoned them. *See* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned."). Accordingly, our analysis narrows to whether summary judgment was proper on Plaintiffs' negligent misrepresentation and fraud claims.

reasonable inferences in that party's favor." *Cummings v. Carroll*, 379 N.C. 347, 358 (2021) (quotation marks and citation omitted). Upon a motion for summary judgment,

> an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e) (2023). Therefore, to survive a summary judgment motion, the burden is on the party opposing the motion to present some evidence beyond the mere allegations in the pleadings establishing a genuine issue of material fact. *Id.*

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988) (citations omitted). "[W]hether liability accrues is highly fact-dependent, with the question of whether a duty is owed a particular plaintiff being of paramount importance." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220 (1999) (citation omitted). As such, summary judgment should only be granted when "the evidence is free of material conflict, and the only reasonable inference that can be drawn therefrom is that there was no negligence on the part of defendant, or that his negligence was not the proximate

cause of the injury." *Id.* (citation omitted).

The elements of fraud are well established: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519, 526-27 (2007) (citation omitted). "A claim for fraud may be based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696 (2009) (quotation marks and citation omitted).

Generally, a duty to disclose arises where "there is no fiduciary relationship and one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Id.* (quotation marks and citation omitted). Specifically, a real estate broker has a duty to disclose "all material facts that he or she knows to the potential buyer, with such 'material facts' including those that an agent knows or should know would reasonably affect the purchaser's judgment." *Cummings*, 379 N.C. at 364 (cleaned up). No fiduciary relationship exists between a seller's agent and a buyer in a sale for real estate. *See Greene v. Rogers Realty & Auction Co.*, 159 N.C. App. 665, 668-69 (2003). Moreover, a defendant can "not, of course, be liable for concealing a fact of which it was unaware." *Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 190 (1988).

Here, Plaintiffs contend that Defendants negligently and fraudulently failed to disclose the following "material facts": (1) "that there were defects in the subfloor," (2) that "farm animals" were present in the home, and (3) "that the entirety of the renovations lauded by [] Reid on the listing were conducted by individuals not qualified to make such repairs." Plaintiffs argue that these are material facts that, if known by them, would have influenced their decision to purchase the home.

First, Plaintiffs have failed to show that Reid knew of "defects in the subfloor." The evidence shows that the only defect in the subfloor Reid was aware of was a "soft spot" on a sheet of plywood on the floor. Reid discovered this during her first walk-through of the home and promptly recommended that Meletich consult a flooring company to have the spot fixed. Moreover, several months later, Meletich assured Reid that the spot had been fixed, and Reid visited the home and confirmed that there was no longer a soft spot in the floor. Therefore, at the time she listed the home for sale, Reid had no knowledge of "defects in the subfloor," and she was under no duty to disclose the former repairs to the subfloor to Plaintiffs, the potential buyers.

Second, Plaintiffs have failed to show that Reid's knowledge of "farm animals" in the home is a material fact that would have impacted Plaintiffs' decision to purchase the home. When Reid visited the home for the first time, she saw a box of baby chicks on a countertop in the kitchen. Meletich informed Reid that the chicks were in the kitchen temporarily and were soon going to be moved outside. Reid had

no knowledge of any other animals, with the exception of dogs, being present in the home, nor did she have any knowledge of the baby chicks—even assuming they are "farm animals"—causing damage to the home. Plaintiffs have therefore failed to show that the box of baby chicks temporarily sitting on a kitchen countertop constitutes a fact "that an agent knows or should know would reasonably affect the purchaser's judgment." *Cummings*, 379 N.C. at 364 (cleaned up).

Finally, the online listing created by Reid stated that renovations to the home had been completed, including "new flooring, new paint, new bathroom sinks, new kitchen [] counter-tops and backsplash complete with a new [] sink and new faucet[.]" Plaintiffs presented no evidence, other than their mere allegations, tending to show that any of these renovations required a permit or must have been completed by "qualified" individuals. Furthermore, Plaintiffs did not inquire into who had completed the renovations or whether such renovations had been completed properly. Defendants, on the other hand, presented evidence in the form of Asbury's affidavit demonstrating that "[t]he work done to the house for the renovations that [Reid] was aware of or listed in the [listing] for the [home] would not require a building permit from Jacksonville or Onslow County, or require a licensed contractor."

Even if Reid had been under a duty to disclose to Plaintiffs who had performed the renovations, Plaintiffs have failed to demonstrate that such a disclosure would have impacted their decision to purchase the home. Plaintiffs admitted that when they first viewed the home, they confirmed that all the renovations advertised in the

listing had in fact been completed. Plaintiffs' agents did not raise any concerns regarding the renovations, and Plaintiffs had an independent home inspection performed on the home which did not reveal any information Plaintiffs deemed concerning enough to either inspect further or delay the sale. Therefore, Plaintiffs have provided no evidence tending to show that the identities of the individuals who performed the renovations, even if material, would have reasonably affected their decision to purchase the home.

Accordingly, Plaintiffs have failed to demonstrate that Defendants made a material misrepresentation or omission when they represented Meletich throughout the sale of the home. The trial court therefore did not err by granting Defendants' motion for summary judgment.

## III. Conclusion

For the foregoing reasons, we review the merits of Plaintiffs' appeal and affirm the trial court's order granting Defendants' motion for summary judgment.

AFFIRMED.

Judges TYSON and ZACHARY concur.